779 So.2d 331 (1999)
Albert Gaynor SEITHER, Jr., Appellant,
v.
Kathryn M. SEITHER, Appellee.
No. 98-02590.
District Court of Appeal of Florida, Second District.
December 15, 1999.
Clarification Denied January 20, 2000.
M. Katherine Ramers of M. Katherine Ramers, P.A., Dunedin, for Appellant.
Scott E. Schiltz and Wayne J. Boyer of Boyer and Schiltz, P.A., Clearwater, for Appellee.
ALTENBERND, Acting Chief Judge.
Albert Gaynor Seither appeals the final judgment of dissolution of his marriage to Kathryn M. Seither. He challenges the trial court's inclusion of certain stock options within his income, the amount of attorneys' fees and costs awarded to Mrs. Seither, and the valuation date used for certain marital assets and liabilities.[1] Our review of this case is hampered by Mr. Seither's decision to represent himself at trial. Although we are inclined to believe that some types of stock options received from an employer might be better treated as marital assets and divided between the parties, the trial court did not abuse its discretion in this case when it treated these options as income. We affirm the trial court's judgment, but require that the award of attorneys' fees and costs be adjusted to reflect payments made by Mr. Seither prior to judgment.
The parties were married in June 1978 and separated in June 1997. The final *332 hearing on Mr. Seither's petition for dissolution was held on May 5 and 6, 1998. Both Mr. and Mrs. Seither worked outside the home throughout the marriageMr. Seither as a pilot and Mrs. Seither as a dental hygienist. The Seithers have two children, a son who is now an adult and a daughter who is now 17. The parties agreed on custody issues, and child support for the daughter was set at $893. The couple's net worth was very modest with the exception of assets held in retirement accounts. The primary disputes at trial concerned alimony and the valuation of the retirement accounts.
After the two-day final hearing, the trial court found that Mrs. Seither had a need for, and Mr. Seither the ability to pay, $4,000 per month in permanent periodic alimony. The court determined Mrs. Seither was entitled to permanent alimony because the parties had been married twenty years, there was a great disparity in their incomes, and Mrs. Seither had a medical condition which limited her ability to work. The trial court also awarded Mrs. Seither $42,563 in attorneys' fees and $5,000 for accountant's fees. The court ordered Mr. Seither to pay 58.6% of these fees, which was the same proportion that Mr. Seither's income bore to the parties combined net income.
Mr. Seither's primary complaint is that the trial court treated certain stock options he had received from his employer, Southwest Airlines, as income in determining his ability to pay support. He does not contest the trial court's finding that Mrs. Seither needed $4,000 per month in alimony. According to Mr. Seither, by including the stock options in his income, the trial court overstated his ability to pay alimony and child support, and left him with insufficient income to support himself. We note that Mr. Seither's own financial affidavit reflects net annual income in excess of $100,000 without the stock options. Thus, it is quite possible that the trial court could have awarded alimony approaching $4,000 per month, even if the stock options had been treated as a marital asset.
Because Mr. Seither represented himself, the majority of the evidence concerning these stock options came from Mrs. Seither's certified public accountant. This CPA testified that Mr. Seither had been granted 8415 options to purchase Southwest Airlines stock as a part of his employment. Apparently, these options were granted to Mr. Seither in lieu of a salary increase. The accountant testified that these options vested at the rate of 1403 options per year on September 1 of each year for five years beginning September 1, 1998. The remainder of these options vested on September 1, 2003. The accountant determined the value of each stock option by subtracting the price of each option, $13.33, from $26 13/16, which was the market value of the underlying stock as of a few days before the final hearing. The accountant then multiplied this difference, approximately $13.48, by the 1403 options that were scheduled to vest each year and determined that Mr. Seither would have approximately $18,900 of additional yearly income by exercising these options.
Unfortunately, neither party introduced Mr. Seither's actual employment agreement with Southwest Airlines or any other documents explaining the details of his options. No one from Southwest Airlines testified. No stock broker testified concerning methods used to purchase and sell these options. The trial court and this court simply have a record in which a CPA concludes, after his review of the stock option agreements, that the options can be treated as income in the above-described manner.
The difficulty with options in a dissolution proceeding is that they have a dual nature. They have characteristics of an asset in that they represent a right to purchase an ownership share in the underlying corporation's stock. Under some circumstances, they can be alienable. On the other hand, they have characteristics of income in that the whole purpose behind *333 options is to allow the owner to capture the appreciation in value of the stock prior to its actual purchase. They are usually exercisable over time. Options are often designed to be exercised immediately, not held over the long term. Also, they are often given as a form of compensation. Complicating their nature even further, if an option is given as compensation, it can be deferred compensation for past services, compensation for present services, or compensation for future services. See generally DeJesus v. DeJesus, 665 N.Y.S.2d 36, 39 (N.Y.App.1997); In re Marriage of Hug, 154 Cal.App.3d 780, 201 Cal.Rptr. 676, 679 (1984). Finally, if the trial court's judgment relies upon a method to distribute the options that requires a current valuation, the risk always exists that the stock price will be significantly higher or lower when the options are actually exercised.[2]See Eric Hollowell, Annotation, Valuation of Stock Options for Purposes of Divorce Court's Property Distribution, 46 A.L.R.4th 689 (1986).
The majority of cases dealing with options have grappled with the question of whether they are marital or non-marital property. In these cases, several approaches have developed. In some jurisdictions, the courts have held that stock options which are not exercisable as of the date of separation and which may be lost as a result of events occurring thereafter are never marital property. See, e.g., Hall v. Hall, 88 N.C.App. 297, 363 S.E.2d 189 (1987). Other jurisdictions have deemed stock options granted during the marriage to be wholly marital property, regardless of whether there are other conditions that must be met before the options would vest. See, e.g., Green v. Green, 64 Md.App. 122, 494 A.2d 721 (1985).[3] Finally, some courts have used a time formula to carve out some portion of the options as marital property. See, e.g., In re Marriage of Hug, 154 Cal.App.3d 780, 201 Cal.Rptr. 676. See generally Eric Hollowell, Annotation, Divorce and Separation: Treatment of Stock Options for Purposes of Dividing Marital Property, 46 A.L.R.4th 640 (1986).
In this case, the trial court refused to treat the options as an asset and instead considered them as income available to Mr. Seither for both alimony and child support. We believe it would be inappropriate, especially on this record, to limit the trial court's discretion by stating that options can never be income.[4] In fact, this court has suggested in a previous decision that stock options can be considered as income for alimony purposes. See Milo v. Milo, 718 So.2d 343 (Fla. 2d DCA 1998). *334 A recent case from Ohio has explicitly held in a modification proceeding that options can be considered as income. See Murray v. Murray, 128 Ohio App.3d 662, 716 N.E.2d 288 (1999). Moreover, the cases discussing stock options universally recognize that the circumstances under which options are granted and the nature of the options themselves can vary so greatly that no single formula or set of factors can effectively deal with them. See DeJesus, 665 N.Y.S.2d 36; In re Marriage of Hug, 154 Cal.App.3d 780, 201 Cal.Rptr. 676.
The condition of this record is such that, unless the trial court was required as a matter of law to treat the options as an asset, it would be impossible to hold that the trial court erred in treating them as income. Mr. Seither failed to present any evidence challenging the testimony of the accountant. Accordingly, it remains for another case with a better record for this court to further address the treatment of stock options in dissolution proceedings. However, if the price of Southwest Airlines' stock falls significantly below the CPA's prediction, this change should be regarded as a potential ground for modification of alimony.
Turning to Mr. Seither's second issue, the trial court did not abuse its discretion in ordering Mr. Seither to pay 58.6% of Mrs. Seither's attorneys' and accountant's fees.[5] It appears, however, that the trial court failed to credit Mr. Seither with payments he had already made on behalf of Mrs. Seither for temporary fees and costs. The record discloses that Mr. Seither paid $12,500 in temporary attorneys' fees on Mrs. Seither's behalf and made a $2,500 contribution to her accountant's fees. Without credit for these payments, Mr. Seither's proportion of the fees is substantially higher than the percentage the trial court ordered Mr. Seither to pay. It is possible that the parties can make this adjustment without alteration of the final judgment because the judgment simply fails to address the issue. However, if the parties cannot agree, on remand the trial court should amend the judgment to reflect these credits.
Affirmed and remanded with instructions.
NORTHCUTT and DAVIS, JJ., Concur.
NOTES
[1] We affirm the issue concerning the valuation date without discussion.
[2] In this case, for example, the trial court assumed that the stock was worth $26 13/16 because of its price at the time of the final hearing. Southwest Airlines is a fairly volatile growth stock, whose shares are traded on the New York Stock Exchange. As a result, the price of that stock is readily available. The stock has undergone a 3 for 2 stock split since the time of this trial. The stock's price, adjusted to reflect the split, has fallen below $7 and risen above $23 during the last three years. At this point, there is no indication that the trial court's pre-split evaluation of $26 13/16, which translates to a post-split price of $17.875, has been unfair for Mr. Seither, but that possibility certainly exists.
[3] In Green v. Green, 64 Md.App. 122, 494 A.2d 721 (1985), the Maryland court recognized that stock option plans often provide an employee "the right to accept within a prescribed period and under certain conditions the corporate employer's irrevocable offer to sell its stock at the price quoted. If the employer attempts to withdraw that offer, the employee has `a chose in action' in contract against the employer." Green, 494 A.2d at 728. Cf. § 61.075(5)(a)(4), Fla. Stat. (1997) (broadly defining marital assets to include "[a]ll vested and unvested, benefits, rights, and funds accrued during the marriage in retirement, pension, profit-sharing, annuity, deferred compensation, and insurance plans and programs.")
[4] We note that if a trial court decided to treat certain stock options as an asset, it apparently could not then treat these same options as income for the purpose of calculating alimony. See Diffenderfer v. Diffenderfer, 491 So.2d 265 (Fla.1986). Whether the same would be true for calculating child support is an unresolved question.
[5] We caution, however, that it is not always appropriate to use a net earnings ratio to allocate fees. This method does not directly consider the fact that the payor spouse is typically liable for all of his or her own attorneys' fees.