969 So.2d 482 (2007)
Barbara GEOGHEGAN, Appellant/Cross-Appellee,
v.
Timothy GEOGHEGAN, Appellee/Cross-Appellant.
No. 5D06-1843.
District Court of Appeal of Florida, Fifth District.
November 16, 2007.
*483 Pamela Huddleston, of Huddleston, Palumbo, Robbins & Riddle, P.A., Melbourne, and Michael R. Walsh of Michael R. Walsh, P.A., Orlando, for Appellant/Cross-Appellee.
Mayanne Downs, of King, Blackwell, Downs & Zehnder, P.A., Orlando, for Appellee/Cross-Appellant.
MONACO, J.
The appellant, Barbara Geoghegan, appeals from an amended final judgment granting a dissolution of her marriage to Timothy Geoghegan, and resolving the usual financial and child support issues. As the children of this marriage are now all adults, the primary issues raised in the appeal concern the allocation of monetary resources between the parties. We affirm the final judgment in all respects, save two: alimony and attorney's fees.
*484 I. Alimony.
This is a long term-marriage (31 years) during which, according to the final judgment, the parties enjoyed a standard of living that was "above average, but not opulent." The Wife had earned a Bachelor's Degree in sociology prior to the marriage, and a Master's Degree in reading during the marriage. The Husband had similarly obtained a Bachelor's Degree in Economics and a Master's Degree in Business Administration. The Wife had not worked outside the home for many years, as the parties agreed that she should stay at home to raise the three children born of this marriage.
At the time of the dissolution the Husband was employed by the Harris Corporation, and was earning a base salary of $178,000, plus an incentive bonus award and certain stock options and share awards, the nature of which changed somewhat over the years. The Husband first received stock options in 1991. Although he received none from 1992 through 1994, he has annually been granted stock options from 1995 to the present. These stock options awarded to the Husband by his employer would vest over a three-year period,[1] but had to be exercised by him within seven years of issuance. The Husband regularly exercised his stock options and used the proceeds to meet the family's obligations.
On occasion the Husband received "performance" shares, which would be earned based on the performance of the Harris Corporation and his continued employment by that organization. The performance shares were on a cliff-vesting schedule, meaning that none of these shares would vest until three years had elapsed from their date of issuance. In addition, the Husband also received certain "restricted shares" from his employer. These shares were again granted to the Husband by his employer for the purpose of encouraging continued employment. The restricted shares, which also carried a three-year cliff-vesting schedule, were first received by the Husband about a year after the parties separated.
Finally, the Husband has on occasion received a performance bonus based on the performance of the employer. Historically, the Husband has over the last five years received a performance bonus in two of these years.
Since becoming employed by Harris, the Husband has set aside ten per cent of his income for retirement. He typically contributed the maximum amount allowed by law into his 401K plan, with the remainder deposited into a SERP[2] account. In addition, he set up a medical savings account to pay for non-covered medical expenses incurred by him and his family. According to his affidavit, the Husband contributes $416.67 per month for this purpose. All of these contributions, of course, are made with pre-tax dollars.
The trial court found in the final judgment that the Husband's annual income was about $259,000, "inclusive of base salary, bonuses, stock options, performance shares and existing restricted shares," and granted the Wife permanent periodic alimony in the amount of $5,000 per month, as well as six months of rehabilitative alimony in the amount of $1,000 per month. It is the calculation of permanent alimony by the trial court that troubles us.
Any consideration of a determination of the amount of an alimony award must be grounded in section 61.08(2), Florida *485 Statutes (2006). The principle undergirding this statute is that alimony should be a balance of two elements: the needs of the payee and the ability of the payor to sustain that need. See Jaffy v. Jaffy, 965 So.2d 825 (Fla. 4th DCA 2007). Section 61.08(2) begins with the mandate that in order for a court to determine "a proper award of alimony or maintenance, the court shall consider all relevant economic factors." Among the factors that the legislature specifically listed is "(g) All sources of income available to either party." See also O'Connor v. O'Connor, 782 So.2d 502, 504 (Fla. 2d DCA 2001); Brock v. Brock, 690 So.2d 737 (Fla. 5th DCA 1997). The term, "income," is defined in section 61.046(7), Florida Statutes (2006), as it pertains to the present case, as follows:
(7) "Income" means any form of payment to an individual, regardless of source, including, but not limited to: wages, salary, commissions and bonuses, . . . annuity and retirement benefits, pensions, dividends, interest, royalties, trusts and any other payments, made by any person, private entity, federal or state government, or any unit of local government.
Our task on review is to determine whether the judgment is supported by competent evidence. See Saporito v. Saporito, 831 So.2d 697, 701 (Fla. 5th DCA 2002). In order to facilitate a meaningful appellate review of the trial court's alimony determination, it is incumbent upon the trial court to include specific findings of fact regarding the factors enumerated in section 61.08(2)(a)-(g). Williams v. Williams, 923 So.2d 606, 607 (Fla. 2d DCA 2006); Jain v. Jain, 915 So.2d 711, 712 (Fla. 4th DCA 2005); Milo v. Milo, 718 So.2d 343, 344 (Fla. 2d DCA 1998); Brooks v. Brooks, 678 So.2d 1368, 1370 (Fla. 1st DCA 1996). The failure to provide these required findings may, therefore, constitute reversible error. Fulmer v. Fulmer, 961 So.2d 1081 (Fla. 1st DCA 2007); Vitalis v. Vitalis, 799 So.2d 1127, 1130-31 (Fla. 5th DCA 2001); Hill v. Hooten, 776 So.2d 1004 (Fla. 5th DCA 2001). "Especially in complex cases with extremely divergent testimony, findings of fact are needed by [the appellate] court to determine that the trial court has in fact acted within its discretion and not in an arbitrary, inconsistent fashion." Haas v. Haas, 552 So.2d 221, 222 (Fla. 2d DCA 1989).
In the present case we can determine from the record that the Husband's base salary, including bonuses, was $234,000. We know, as well, that the Husband indicated on his financial affidavit that he had gross income for the year 2005 in the amount of $258,654. Finally, we know that the trial court found the Husband's income for the purpose of an alimony determination to be about $259,000, "inclusive of base salary, bonuses, stock options, performance shares and existing restricted shares." Neither the Husband's affidavit, nor the final judgment, nor the testimony that was adduced at the trial explains what specifically made up the $25,000 difference between the Husband's salary and bonus money and his gross annual income as determined by the trial court. We can guess that it is made up of "stock options, performance shares and existing restricted shares," but we have no way of knowing how much is attributed to each, and how the allocations were derived. Our guess would not be fair to either party.
A determination of whether stock options and similar incentives are to be included in the annual income of a spouse who is obliged to pay alimony is complex. See, e.g., Seither v. Seither, 779 So.2d 331 (Fla. 2d DCA 1999). See also Charles P. Kindregan and Patricia A. Kindregan, Unexercised Stock Options and Marital *486 Dissolution, 34 Suffolk U.L. Rev. 227 (2001). Here, however, some of the stock incentives awarded to the Husband by his employer have been granted with great regularity. As noted, for example, the generic stock options have been awarded to the Husband yearly since 1995, and have been used in the past by the family to meet family obligations. Because they have been granted regularly and continuously, and have historically made up a part of the family income, some component of the stock options should have been considered by the trial court as a candidate for possible inclusion as income available to the Husband when the court determined his ability to pay. See, e.g., Parry v. Parry, 933 So.2d 9, 16 (Fla. 2d DCA 2006); Shrove v. Shrove, 724 So.2d 679, 682 (Fla. 4th DCA 1999). Some employer incentives have, however, only been granted irregularly to the Husband. For example, performance bonuses have only been awarded in two of the last five years. Indeed, in some measure it appears that the trial court did ratchet up the income of the Husband with the stock options in mind. We just cannot tell from the judgment or the record how the court got there.
Moreover, there is no indication that the trial court considered including the income earned by the Husband that was annually contributed by him to his 401K plan, SERP account, or medical savings account[3] in the calculation of the Husband's income. As these payments are voluntary contributions (albeit for valid and beneficial purposes) on the part of the Husband, and as they reduce the apparent annual income available to the Husband, they should have been considered by the trial court in making the ability-to-pay alimony calculation. Cf. Fitzgerald v. Fitzgerald, 912 So.2d 363, 365 (Fla. 2d DCA 2005); Copeland v. Copeland, 667 So.2d 487 (Fla. 1st DCA 1996).
Finally, we must also consider the judgment as it relates to the Wife's need. Once again, we are unable to reconcile how this aspect of the equation was determined by the trial judge. It may be that $5,000 per month in permanent alimony is all that the Wife needs in order to satisfy the requirements of section 61.08. We simply cannot tell from the judgment. See Mathieu v. Mathieu, 877 So.2d 740, n. 1 (Fla. 5th DCA 2004), review denied, 909 So.2d 862 (Fla.2005).
Accordingly, we reverse that part of the final judgment of dissolution insofar as it determines that the Husband shall pay to the Wife permanent periodic alimony in the amount of $5,000 per month, and direct the trial court to revisit this issue and provide findings of fact from which a reviewing court can determine whether the award squares with the requirements of section 61.08 and the cases construing it. We note for the guidance of the trial judge that we find no abuse of discretion in the imputation of income to the Wife.
II. Attorney's Fees.
The trial court ordered that each party be responsible for his or her own attorney's fees and court costs. We review this determination for an abuse of discretion. Stern v. Chovnick, 914 So.2d 524 (Fla. 4th DCA 2005).
Once again, need and the ability to pay are the primary elements to be considered in deciding entitlement to attorney's fees in a dissolution proceeding. See Rosen v. Rosen, 696 So.2d 697 (Fla. 1997). The idea, of course, is to "ensure *487 that both parties have similar access to competent legal counsel." Id. at 699.
After reviewing the equitable distribution of assets, including the nature of the assets distributed to the Wife, and the relative financial resources of the parties, as well as the vast disparity in income between the Husband and Wife, we conclude that the trial court erred in not awarding attorney's fees to the Wife. We, accordingly, reverse on this issue, as well.
III. Conclusion.
Except with respect to the amount of permanent alimony awarded the Wife and the lack of an award of attorney's fees in favor of the Wife, we affirm the final judgment of dissolution. We note in particular for the guidance of the trial court that we approve the grant of the dissolution of the marriage, the equitable division of the assets of the parties, the award of child support, and all other aspects of the final judgment other than those noted. We direct the trial court to revisit the issues of permanent alimony and attorney's fees in accordance with this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
ORFINGER and TORPY, JJ., concur.
NOTES
[1] 50% would vest in the first year, 75% after two years, and 100% after three years.
[2] Supplemental Executive Retirement Plan.
[3] It may be that all or some part of the money placed in the medical savings account is being used to pay medical bills for the Husband and Wife. If so, that information can certainly be factored into the matrix that yields the Husband's ability to pay.