THOMAS A. WOOTERS *vs.* JANET S. WOOTERS.

No. 08-P-824.

Middlesex. January 9, 2009. - August 18, 2009.

Present: CYPHER, BROWN, & KATZMANN, JJ.

*Divorce and Separation,* Alimony. *Contempt.*

In an action charging contempt of a judgment of divorce nisi, the judge
properly compelled the husband to pay, as part of his "gross annual employ-
ment income" as provided in the divorce judgment, alimony arrearage
resulting from his exercise of stock options [841-843]; however, a finding
of contempt was not warranted, where there was no clear and undoubted
disobedience of a clear and unequivocal command, in that to a reasonable
person, it might not be readily apparent that stock option proceeds should
be considered as part of one's gross annual employment income [843-844].

COMPLAINT for divorce filed in the Middlesex Division of the
Probate and Family Court Department on July 14, 1992.

A complaint for contempt, filed on July 12, 2007, was heard
by *Dorothy M. Gibson,* J.

*Norman I. Jacobs (Mary M. Ferriter* with him) for the husband.

*Alexander Furey* for the wife.

KATZMANN, J. Can the exercise of stock options be considered
as part of gross annual income under a divorce judgment? We
consider this question in the context of an appeal from a contempt
order. We conclude that the answer is in the affirmative, but that,
in the circumstances here, a contempt judgment was not appro-
priate.

*Background.* We recite the facts from the judge's findings
and the uncontradicted evidence before her, reserving recitation
of certain facts as they become relevant in regard to the issues
raised.

Thomas Wooters (husband) and Janet Wooters (wife) were

divorced on June 2, 1994.[1] Paragraph one (1) of the divorce judgment provided, in relevant part:

> "Alimony, Support and Maintenance: Until the earlier to occur of the death of either party, the [husband] shall pay to the [wife] an amount as alimony for her support and maintenance, which amount shall be equal to one-third (33 1/3%) of the [husband's] *gross annual employment income.* Such income amount shall be computed without any deduction for capital contributions, retirement contributions, medical insurance premiums, tax liability of any kind, any amount not distributed in cash, life insurance premiums or any other amount of income withheld prior to distribution." (Emphasis supplied.)

At the time of the divorce in 1994, the husband was a partner in the law firm Peabody & Arnold, where he had a seven-year average of earning about $220,000 per year. In 2003, the husband accepted a position as executive vice president and general counsel for LoJack Corporation (LoJack). The husband's compensation package included a base salary, annual bonus, shares of nonqualified stock options, and various other benefits.

In 2006, the husband exercised some of his stock options.[2] The husband's 2006 W-2 form listed his gross pay from LoJack as $1,171,208.38, which included the compensation from the exercised stock options. In June of 2007, the wife became aware that in January, 2006, the husband had exercised certain of his options. She demanded that the husband pay to her one-third of the pretax income realized from the exercise of the options. The husband responded that the divorce judgment did not encompass the income derived from the exercise of the options. On July 12, 2007, the wife filed a complaint for contempt, alleging that the husband had failed to pay the wife alimony as directed by the divorce judgment. Following the September 19, 2007, hearing, a Probate and Family Court judge found the husband guilty of contempt and ordered him to pay alimony in accordance with

[1] The divorce judgment was subsequently affirmed. See *Wooters* v. *Wooters*, 42 Mass. App. Ct. 929 (1997).

[2] The husband exercised 45,000 options and it is the exercise of these options that is the subject of this contempt and appeal. The rest of the options remained unexercised.

the divorce judgment. The husband now appeals from the judgment finding him in contempt and ordering him to pay the alimony arrearage.

*Discussion.* The judge determined that the husband's exercised stock options fell within the definition of "gross annual employment income" as provided in the divorce judgment and held the husband in contempt for failure to pay proper alimony. On appeal, the husband challenges the judge's order, claiming that (1) the employee stock options should not be considered part of his "gross annual employment income"; (2) the finding of contempt was improper; and (3) the judge erred in denying him an evidentiary hearing.

a. *Employee stock options.* A determination whether stock options and similar incentives are to be included in the annual income of a spouse who is obliged to pay alimony is complex. See, e.g., *Seither* v. *Seither,* 779 So. 2d 331, 332-333 (Fla. Dist. Ct. App. 1999). See also Kindregan and Kindregan, Unexercised Stock Options and Marital Dissolution, 34 Suffolk U. L. Rev. 227, 236-237 (2001). The Massachusetts courts have not addressed this precise issue in a published opinion; however, quite a few out-of-State decisions have dealt with it and inform our analysis.

Generally, employment stock options are issued as part of one's compensation; they allow "a corporate employee to buy shares of corporate stock at a fixed price or within a fixed period." Black's Law Dictionary 1459 (8th ed. 2004). "In their simplest form, stock options are another way for employers to compensate their employees. An option gives the employee the right to purchase the employer's stock at a predetermined price during a prescribed time period." *Baccanti* v. *Morton,* 434 Mass. 787, 795 (2001). The challenge posed by stock options in divorce proceedings is that they have a dual nature: On the one hand, they could be characterized as "an asset in that they represent a right to purchase an ownership share in the underlying corporation's stock. . . . On the other hand, they have characteristics of income in that the whole purpose behind options is to allow the owner to capture the appreciation in value of the stock prior to its actual purchase." *Seither* v. *Seither,* 779 So. 2d at 332-333. See *In re Marriage of Robinson & Thiel,*

201 Ariz. 328, 332 (Ct. App. 2001). Courts outside Massachusetts[3] have held that exercised stock options are to be considered part of one's income. See *id.* at 330 (vested employee stock options constituted income for purposes of calculating child support); *Hiett* v. *Hiett*, 86 Ark. App. 31, 36 (2004) (it was not error for trial court to base alimony award on percentage of net income including stock options that may be exercised by husband in future, given that all sources of income must be considered in determining alimony); *In re Marriage of Kerr*, 77 Cal. App. 4th 87, 92 (1999) (future grant of stock options is part of husband's over-all compensation package and is properly considered in setting both alimony and child support); *Seither* v. *Seither*, 779 So. 2d at 333 (stock options determined to be income for purposes of child support); *Geoghegan* v. *Geoghegan*, 969 So. 2d 482, 485-486 (Fla. Dist. Ct. App. 2007) (certain stock options should have been included in income for purposes of alimony); *In re Marriage of Colangelo*, 355 Ill. App. 3d 383, 392 (2005) (stock option distributions were "income" for purposes of child support); *Matter of Dolan & Dolan*, 147 N.H. 218, 221 (2001) (exercised stock options must be included as income for purposes of calculating child support); *Murray* v. *Murray*, 128 Ohio App. 3d 662, 666-670 (1999) (stock options were to be included within definition of "income" in determining child support).

The fact that some of the cases involve child support rather than alimony and some deal with situations where stock options were also addressed in connection with property division between the parties is of no material consequence to our inquiry here. Regardless of the context, those cases primarily focus on the

[3]The two Massachusetts cases that are discussed in the parties' briefs did not reach the question before us here. In *Braun* v. *Braun*, 68 Mass. App. Ct. 846, 859-860 (2007), this court declined to address whether a judge is precluded from treating stock options as income in appropriate circumstances because the husband-appellant did not challenge the trial judge's decision to treat the proceeds from stock options as income. Furthermore, *Braun* appears to be substantially different, as the divorce judgment there expressly excluded stock options unless exercised and received as income. *Id.* at 849 n.4. The other case, *Baccanti* v. *Morton*, 434 Mass. 787, 794 (2001), examined the question whether unvested stock options were assets that could be included in the marital estate for purposes of property division in a divorce proceeding. While holding that the stock options were assets, the court did not, in any way, address the question whether they become income when exercised. See *id.* at 796-797.

broad definition of "income" to ascertain whether stock options should be included in the definition. Analogously, in the present case, we are dealing with the definition of "gross annual employment income," which is a broad and flexible term. See *Murray v. Murray*, 128 Ohio App. 3d at 667. As such, the term can plausibly encompass the income obtained from the exercise of stock options, as long as the definition is not limited by the parties. In fact, here, the judge properly observed that there was ample opportunity for the parties to restrict the definition of "gross annual employment income," and if the parties wished to do so, they should have done that at the time of divorce.

In addition to the supporting case law, common sense dictates that the income realized from the exercise of stock options should be treated as gross employment income: It is commonly defined as part of one's compensation package, and it is listed on W-2 forms and is taxable along with the other income.[4] Stock options are each customarily calculated with at least some reference to the others. We also note that this determination accords with policy considerations as well — if the exercised stock options were not deemed income for alimony purposes, a person could potentially avoid his or her obligations merely by choosing to be compensated in stock options instead of by a salary. See *Matter of Dolan & Dolan*, 147 N.H. at 221.

In sum, we conclude that the husband's exercised stock options are part of his "gross annual employment income."

b. *Finding of contempt.* The husband next asserts that the judge erred in finding him in contempt for failure to pay a portion of alimony resulting from his stock option proceeds. "To constitute civil contempt there must be a clear and undoubted disobedience of a clear and unequivocal command." *Mahoney v. Mahoney*, 65 Mass. App. Ct. 537, 540 (2006), quoting from *Kraft v. Police Commr. of Boston*, 417 Mass. 235, 239 (1994). See generally *Pedersen v. Klare, ante* 692, 697-698 (2009). The party seeking contempt must prove his or her case by a pre-

---

[4]The judge correctly found that "[s]tock options are often an important part of an employee's compensation package. The Husband argues that the nonqualified stock options offered to him by LoJack were simply to attract him to the Company. Regardless of whether the stock options are seen as an incentive, they are still part of the employment compensation package."

ponderance of the evidence. *Manchester* v. *Department of Envtl. Quality Engr.*, 381 Mass. 208, 212 (1980). Moreover,

> "[i]ndefinite and uncertain language cannot support a complaint for contempt because of a lack of fair notice to the person subject to the order, and because 'ambiguity carries with it the potential for becoming "an instrument of [judicial] severity." ' Consequently, we ordinarily resolve ambiguities in divorce decrees in favor of the person charged with contempt. While vague or ambiguous language in a judicial decree cannot constitute a 'clear and unequivocal command,' a party's self-serving characterization of a provision as 'ambiguous' does not make it so." (Citations omitted.)

*Stabile* v. *Stabile*, 55 Mass. App. Ct. 724, 726-727 (2002).

While we think that the order for the husband to pay the proceeds of his stock options — as part of his "gross annual employment income" — is proper, holding the husband in contempt for failure to pay was not appropriate here. The husband has been providing the wife with timely and correct payments of alimony for the past fifteen years. He claims that he, in good faith, did not think that the proceeds of the stock options constituted income as defined in the divorce judgment. In our view, the husband's disagreement or misunderstanding of the issue does not constitute clear and undoubted disobedience of a clear and unequivocal command. To a reasonable person, it may not be readily apparent that stock option proceeds constitute one's gross annual income, especially if it is not defined as such in the parties' divorce decree. Indeed, prior to our decision here, the question had not been resolved by a published Massachusetts opinion. In light of the totality of the circumstances, we conclude that a finding of contempt was not warranted.

In sum, we sustain the portion of the judgment compelling the husband to pay alimony arrearage to the wife based on his stock option proceeds. We determine that the wife has not satisfied her burden to support a contempt judgment, and accordingly we reverse the portion of the judgment finding the husband guilty of contempt.[5]

*So ordered.*

---

[5]In light of our disposition, we need not address the husband's claim that the judge erred in not holding an evidentiary hearing.