NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-7

M.K.C.

vs.

K.G.C.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

In April 2011, then-married spouses M.K.C. (wife) and K.G.C. (husband) executed a surviving "post-nuptial agreement" (i.e., marital agreement) setting forth provisions related to property division and support in the event of a divorce. Relevant here, the agreement (1) excluded the wife's inheritance from the property division; (2) provided for an equal division of all other property between the parties; (3) contained a reciprocal alimony obligation under which each party's "gross income," including "capital gains," would be "divided equally, as alimony, between [the parties]"; and (4) reserved the issue of child support for determination by a judge, while providing that the parties would share equally in the children's college expenses.  In subsequent divorce proceedings, a judge of the Probate and Family Court ultimately found the agreement to be

fair and reasonable, and thus enforceable, pursuant to <u>Ansin</u> v.

<u>Craven-Ansin</u>, 457 Mass. 283 (2010).

In postdivorce litigation involving complaints for modification and contempt, the husband sought child support from the wife and the wife claimed that the husband was in contempt for failing to pay alimony from his gross income as required by the agreement (including from the capital gain that he realized from selling the former marital home, which he received as part of the division of marital assets).  In judgments entered October 21, 2022, the same judge (1) ordered the wife to pay retroactive child support of $153,455; (2) adjudicated the husband not guilty of contempt but established his alimony arrearage at $102,416.19, excluding from this amount any portion of the capital gain realized by the husband from the sale of the marital home; and (3) declined to award the wife prejudgment interest on the arrearage.  The wife appealed.[1]  For the reasons

---

[1] Multiple, separate judgments/decrees all were entered on October 21, 2022.  Of those judgments, the wife did not notice appeals from a judgment/decree on complaint for modification (docket #322), or from three additional judgments/decrees on complaints for contempt (docket ## 323, 327, and 329); those judgments are not before us.  Although the wife noticed appeals from the judgments/decrees on the complaint for contempt filed April 5, 2017 (docket #324), and on the complaint for contempt filed September 28, 2017 (docket #325), she raises no argument in her briefing addressing those judgments and, for that reason and although those judgments are before us, we need not discuss them further.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019) ("The appellate court need not pass upon questions or issues not argued in the brief").  The

that follow, we conclude that it was error to exclude the marital home capital gain from the husband's gross income for purposes of alimony. We therefore vacate the portion of the judgment establishing the husband's arrearage and remand for further proceedings consistent with this memorandum and order. The judgments are affirmed in all other respects.

Background. We summarize the trial judge's relevant findings, supplementing them with undisputed facts in the record, and reserving other facts for later discussion. See Pierce v. Pierce, 455 Mass. 286, 288 (2009). The parties were married in 1988 and divorced in 2016. They had four children together during the marriage; by the time the modification and contempt trial concluded in August 2022, all but the youngest of the children (who was eighteen and about to attend college) were emancipated.

The wife commenced divorce proceedings in 2015, seeking to enforce the agreement. The husband asserted that it was unenforceable, claiming that it was the product of duress or coercion. The divorce proceedings were bifurcated into two phases; the first phase was to determine the validity of the agreement. The judge found the agreement to be enforceable and

remaining judgments before us are the judgments/decrees on the complaint and counterclaim for modification (docket #326), and on the August 9, 2019 complaint for contempt (docket #328).

3

the husband appealed. A different panel of this court upheld the trial judge's determination that the agreement was not a product of duress or coercion, but vacated the judgment and remanded for further proceedings so that the judge could address whether she found the agreement to be fair and reasonable at the time of divorce. Following a trial on remand, the judge issued an "amended supplemental judgment on remand" (remand judgment) that, among other things, (1) vacated certain portions of the divorce judgment; and (2) declared that the agreement was fair and reasonable at the time of the divorce and was therefore enforceable. The husband did not appeal from the remand judgment.

Although the parties were divorced in 2016, the disposition of the former marital home was not resolved until 2020. The parties purchased the marital home in 1999 for $1.635 million. Following the 2016 divorce, the wife remained in the marital home until June 2019, after purchasing a new home. In February 2020, the parties appeared for a hearing to resolve the marital home issue. By that time, the home had fallen into disrepair and had been vacant for several months. Each party sought to retain the marital home and buy out the other party's interest therein. The wife claimed that the husband intended to "flip" the home for a profit, which the husband denied. After a subsequent hearing in July 2020, the judge found the marital

4

home's fair market value to be $2.495 million and issued an order permitting the husband to buy out the wife's one-half interest for $1,040,292.32,[2] in part because the wife had purchased another home. After buying out the wife's interest in September 2020, the husband spent approximately $185,000 on improvements to the home and sold it for $3.675 million in May 2021.

At the 2022 contempt trial, the wife claimed that she was entitled to alimony in the amount of $477,972, representing one-half of the husband's "profits" from the sale of the marital home, which she asserted was a capital gain constituting gross income under the agreement's alimony provision. The wife asserted that the husband had committed a "fraud upon the [c]ourt" when he stated at the February 2020 hearing that he did not intend to "flip" the marital home for a profit.[3] The wife further asserted that the husband had failed to pay alimony from his other gross income for several years. The husband admitted

---

[2] The buyout amount of $1,040,292.32 reflected one-half of $2,495,000, less any outstanding mortgages, liens, or other encumbrances, and less $75,000 for repairs that would have needed to be made to prepare it for sale. The buyout also appeared to reflect a credit to the wife for payments that she made since December 2016 that reduced the mortgage principal balance.

[3] The judge implicitly discredited this allegation when she found the husband not guilty of contempt. Our decision does not determine, or rely on, the credibility of the wife's allegation that the husband lied about whether he intended to "flip" the marital home.

that he owed the wife some alimony but disagreed with the wife as to the amount. The judge ultimately determined that (1) the husband was not obligated to pay alimony from the profit on the marital home, but (2) he owed the wife $102,416.19 from other income that he earned largely between December 2016 and December 2020. The judge declined to find the husband in contempt and further declined to award any statutory prejudgment interest on the alimony arrearage. As for the husband's request for child support, the judge ordered the wife to pay retroactive child support in the amount of $153,455, from April 2017 to June 2022.

On appeal, the wife contends that the judge erred in (1) declining to treat the husband's profit from the sale of the marital home as a capital gain for purposes of calculating his alimony obligation under the agreement; (2) finding the husband not guilty of contempt; (3) declining to award prejudgment interest; and (4) awarding retroactive child support to the husband. We address her contentions in turn.

Discussion. 1. Capital gain. In determining that the husband did not owe the wife "any alimony on the profits" from the sale of the marital home, the judge essentially concluded that the parties did not intend for capital gains, interest, or dividends derived from the sale or transfer of marital assets to be treated as gross income when calculating alimony under the agreement. The judge reasoned that "[t]his home was a marital

6

asset that was already divided between the parties when the [h]usband purchased the [w]ife's interest."  In so concluding, the judge noted that the wife did not pay the husband any alimony from the interest or dividends earned on the marital home buyout funds that she subsequently invested.

The wife claims that the judge's ruling amounted to legal error in contravention of the agreement's "unambiguous" language requiring all capital gains to be treated as gross income for purposes of alimony.  The husband, however, contends that the term "capital gains, in a vacuum, is ambiguous" because it is undefined in the agreement and is susceptible to more than one accepted meaning, comparing the different definitions set forth in the United States tax code and the Child Support Guidelines (guidelines).[4]  Compare 26 U.S.C. § 1222, with Child Support Guidelines § I(A)(17) (Jan. 2009) (treating as gross income for purposes of child support "capital gains in real and personal property transactions to the extent that they represent a

---

[4] The husband further contends that the judge implicitly recognized the ambiguity and resolved it by resorting to extrinsic evidence (i.e., the parties' understanding of the agreement, and their postdivorce conduct).  The wife, however, points out that nowhere in the judge's findings, conclusions of law, or rationale did the judge conclude that the term capital gains was ambiguous.

regular source of income").[5]  For the reasons that follow, we agree with the wife.

The interpretation of an agreement is a question of law we review de novo.  Colorio v. Marx, 72 Mass. App. Ct. 382, 386 (2008).  See Balles v. Babcock Power Inc., 476 Mass. 565, 571 (2017) (interpretation of contract language is question of law we review de novo).  We must construe the agreement based on "a fair construction of the contract as a whole and not by special emphasis upon any one part" (quotation omitted), Kingstown Corp. v. Black Cat Cranberry Corp., 65 Mass. App. Ct. 154, 158 (2005), while also recognizing that "every word is to be given force so far as practicable" (quotation omitted).  MacDonald v. Hawker, 11 Mass. App. Ct. 869, 872-873 (1981).  "[W]hen the language of a contract is clear, it alone determines the contract's meaning."  Balles, supra.  Where, however, the words of a contract are ambiguous, the court may consider extrinsic evidence to ascertain the parties' intent.  Id.

The determination whether the contractual language contains an ambiguity presents a question of law for the court.  See Bank v. Thermo Elemental Inc., 451 Mass. 638, 648 (2008).  "Contract language is ambiguous 'where the phraseology can support a reasonable difference of opinion as to the meaning of the words

_____

[5] The 2009 guidelines were in effect when the parties executed the agreement.

employed and the obligations undertaken'" (quotation omitted).
Id. "The mere existence of the parties' disagreement does not
make the language ambiguous." Browning-Ferris Indus., Inc. v.
Casella Waste Mgt. of Mass., Inc., 79 Mass. App. Ct. 300, 307
(2011). Rather, "[a]n ambiguity arises from language
susceptible of different meanings in the eyes of reasonably
intelligent persons." Id. "To answer the ambiguity question,
the court must first examine the language of the contract by
itself, independent of extrinsic evidence concerning the
drafting history or the intention of the parties." Bank, supra.
See Robert Indus., Inc. v. Spence, 362 Mass. 751, 755 (1973)
(words of agreement remain most important evidence of
intention).

Turning to the language of the agreement, we note two key
provisions that, when read together, reflect that the parties
did not intend to exclude capital gains realized from the sale
of marital assets. See General Convention of the New Jerusalem
in the United States of Am., Inc. v. MacKenzie, 449 Mass. 832,
835 (2007) ("The words of a contract must be considered in the
context of the entire contract rather than in isolation").
First, the alimony provision plainly states, without
qualification, that "all gross income, including but not limited
to . . . capital gains . . . shall be divided equally, as
alimony, between [the parties]." Second, the agreement

9

expressly excludes from the calculation of alimony "capital gains income derived from the [wife's inherited property]." The agreement contains no express exclusion of capital gains derived from marital assets. Had the parties intended to exclude capital gains earned on assets divided in the divorce, they could have included language to that effect, but they did not. Cf. Computer Sys. of Am., Inc. v. Western Reserve Life Assur. Co. of Ohio, 19 Mass. App. Ct. 430, 437 (1985) ("if the parties had intended at-will termination, they could have said so . . . expressly"). The exclusion of capital gains derived from the wife's inherited assets, with no similar exclusion for capital gains derived from any other assets, implies that capital gains realized on all other assets (including marital assets assigned in the property division and any assets acquired by each party after the divorce) would be included.[6]

The husband asserts that the term "capital gains" is inherently ambiguous because a one-time capital gain that would be treated as taxable income under the tax code might not necessarily constitute gross income for purposes of calculating child support under the guidelines (to the extent that it is not a regular source of income). However, there is no indication in the agreement that the parties intended to limit capital gains

---

[6] In light of this holding, we take no position on what, if any, arrearage might be owed by the wife.

10

to regularly occurring gains, or that the parties intended to be bound by the guidelines definition of gross income.[7]  The parties' disagreement at trial hinged on whether the agreement required the parties to pay alimony from capital gains derived from marital assets.  Because we see nothing in the agreement reflecting an intention to exclude capital gains from such assets, we conclude that the judge erred in excluding the husband's gain from the sale of the marital home when calculating his alimony arrearage.

This brings us to the remaining question of how to calculate the husband's capital gain under the unique

---

[7] Among the many changes brought about by the Alimony Reform Act (act), which went into effect in 2012, was the establishment of a statutory definition for income that a judge may consider when calculating alimony.  The act provides that "income shall be defined as set forth in the [guidelines]," G. L. c. 208, § 53 (b), except for "capital gains income and dividend and interest income which derive from assets equitably divided between the parties under [G. L. c. 208, § 34]."  G. L. c. 208, § 53 (c) (1).  However, the act's definition of income does not replace the parties' definition of gross income set forth in their agreement, which was executed five months before the act was approved by the Legislature on September 26, 2011.  St. 2011, c. 124, § 3 (effective Mar. 1, 2012).  The parties acknowledged in the agreement that "in the future each may acquire additional rights . . . as a result of changes in the laws of the Commonwealth of Massachusetts, case law, [or] statutes . . . which would result in . . . a different spousal support award.  Any such changes shall have no effect upon the waivers and provisions of this Agreement . . . .  The parties have executed the within Agreement fully cognizant of [its] binding and permanent effect . . . [and] fully cognizant that they are waiving rights which they may acquire after the date hereof."

11

circumstances presented here. In keeping with the spirit of the parties' agreement to split all marital property and gross income equally, we think the only means of achieving an equal split of a capital gain derived from marital property is to include only the portion of the gain that accrued after the division of that asset. In other words, the portion of the gain realized during the marriage must be excluded when calculating alimony (even if the marital portion is reported on a party's tax return). Here, that necessitates treating the 2020 fair market value of the marital home (rather than its original 1999 purchase price) as the property's basis. See 1 C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice § 16:4 (4th ed. 2013) ("gain is based on the difference between the 'basis' of the property and the amount realized from sale"). Accordingly, we conclude that, for purposes of the agreement's alimony provision, the husband's capital gain realized from the sale of the marital home was $810,944.35,[8] thereby entitling the wife to $405,472.18 (one-half of the husband's gain). We

---

[8] This figure is computed as follows: the amount realized from the 2021 sale of $3,490,944.35 (i.e., the sale price of $3.675 million less selling costs of $184,055.65), minus the property's adjusted basis of $2.68 million (i.e., the 2020 fair market value of $2.495 million, plus $185,000 spent on improvements). See 1 C.P. Kindregan, Jr., M. McBrien, & P.A. Kindregan, Family Law and Practice § 16:4 (4th ed. 2013) (capital gain calculated by deducting property's "adjusted basis," i.e., purchase price plus expenditures for improvements, from "amount realized," i.e., sale price less selling costs).

therefore vacate the portion of the judgment setting the husband's alimony arrearage at $102,416.19, and remand for the limited purpose of entering a new judgment setting the arrearage at $507,888.37. On remand, the judge may, in her discretion, fashion a repayment schedule for the arrearage in installments as she deems appropriate.

2. Contempt. The wife next contends that the judge erroneously found the husband not guilty of contempt where he failed to pay alimony for four years.

"We review the judge's ruling that the husband was not in contempt for abuse of discretion." Smith v. Smith, 93 Mass. App. Ct. 361, 363 (2018). "To prove civil contempt a plaintiff must show two elements: there must be (1) clear disobedience of (2) a clear and unequivocal command." Id. "The contempt must be proved by clear and convincing evidence, and the court is to consider 'the totality of the circumstances.'" Id., quoting Wooters v. Wooters, 74 Mass. App. Ct. 839, 844 (2009).

Here, the judge found the husband not guilty of contempt because the agreement did not contain "a deadline or timetable for the payment of alimony. It was also not clear to both parties what was owed." The wife contends that it was error to find the husband not guilty of contempt in light of his admission that he owed the wife alimony, and the well-settled principle that the time for performance under a contract only

13

extends for a "reasonable time" if no deadline is specified. Charles River Park, Inc. v. Boston Redev. Auth., 28 Mass. App. Ct. 795, 814 (1990).

The judge's contempt ruling, however, was based not only on the ambiguity caused by the lack of payment deadlines in the agreement, but also on the uncertainty surrounding the amount owed by the husband. Ambiguities "are regularly resolved in favor of the alleged contemnor." Sax v. Sax, 53 Mass. App. Ct. 765, 772 (2002). Accordingly, we conclude that the husband's "violation of [the] order to pay alimony [did] not necessarily require a finding of contempt," and therefore discern no error. Smith, 93 Mass. App. Ct. at 364. See Wooters, 74 Mass. App. Ct. at 844 (husband not guilty of contempt where his failure to pay alimony obligation in full was result of good faith dispute over amount owed).[9]

3. Prejudgment interest. The wife contends that the judge erred in not awarding prejudgment interest, as the husband should have been found in contempt and thus required to pay interest under G. L. c. 215, § 34A, or in the alternative, under

_____

[9] The wife seeks to distinguish Wooters because the husband in that case, unlike the husband here, paid some alimony while the dispute over the remaining amount was ongoing. However, in Wooters, 74 Mass. App. Ct. at 844, the only ambiguity was with respect to the amount owed by the husband. Here, because there was ambiguity regarding both the amount owed and the due date, we cannot say that the judge abused her discretion in declining to find the husband in contempt.

14

G. L. c. 231, § 6C, for interest due on a money judgment arising out of a contractual obligation.

In light of our conclusion that the judge permissibly found the husband not guilty of contempt, there was nothing improper in declining to award prejudgment interest under G. L. c. 215, § 34A ("Any monetary contempt judgment shall carry with it interest, from the date of filing the complaint, at the rate determined under the provisions of section six C of chapter two hundred and thirty-one of the General Laws").

We therefore turn to the wife's remaining contention that she is entitled to prejudgment interest under G. L. c. 231, § 6C.[10]  Section 6C provides, in pertinent part, that "[i]n all actions based on contractual obligations, upon a . . . finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages."  Id. The thrust of the wife's rather cursory argument set forth in her main brief is that prejudgment interest is "mandated" under § 6C because the husband's alimony obligation arises from a contractual obligation in the parties' surviving agreement. While the wife is correct that she could seek relief by way of a breach of contract action in the Superior Court, she has not

---

[10] The wife also made a passing claim in her opening brief that she was entitled to interest under G. L. c. 231, § 6H, but she appeared to abandon that argument in her reply brief.

15

cited to any authority establishing that statutory prejudgment interest under § 6C is mandated when a Probate and Family Court judge presiding over a contempt action finds an alimony payor not guilty of contempt but nevertheless orders him to pay alimony due under a surviving agreement. The sole case cited in her main brief, Karellas v. Karellas, 54 Mass. App. Ct. 469 (2002), pertains to postjudgment interest under G. L. c. 235, § 8, and does not address the applicability of prejudgment interest under G. L. c. 231, § 6C.[11] Accordingly, the wife has failed to demonstrate error.

4. Retroactive child support. Finally, the wife claims error in the order requiring her to pay retroactive child

---

[11] In Karellas, 54 Mass. App. Ct. at 474, this court noted that interest under G. L. c. 215, § 34A, "is not a substitute for statutory interest upon a money judgment under G. L. c. 235, § 8," as "[t]he statutes serve different purposes," suggesting that § 34A "fills in a gap and provides for interest that would not be otherwise available" because "an order for . . . alimony . . . may not qualify as a 'judgment for the payment of money' under G. L. c. 235, § 8, and might not thus carry such statutory interest." In her reply brief, the wife asserts that the significance of Karellas is that prejudgment interest under § 34A does not act as a substitute for other statutory interest. The additional cases that she cites in her reply brief do not, however, provide any examples of prejudgment interest under § 6C being applied to the type of judgment that issued in this case (i.e., a Probate and Family Court judgment in a contempt action ordering the husband to pay alimony due under a surviving agreement). See, e.g., O'Malley v. O'Malley, 419 Mass. 377, 377-379 (1995) (holding that prejudgment interest under § 6C should be added to Superior Court judgment ordering wife to pay amount owed as part of property division in surviving separation agreement).

16

support because (1) there was no evidence that the child's needs were not being met during the period in question; and (2) the judge improperly failed to attribute income to the husband.

We review a judge's decision on a complaint for modification regarding child support for an abuse of discretion. Cooper v. Cooper, 62 Mass. App. Ct. 130, 134 (2004). Here, the judge calculated the minimum presumptive order that would have been due under the guidelines for the period between April 2017 (when the wife received notice of the husband's complaint for modification) and June 2022 (when the youngest child graduated from high school at age eighteen). See Child Support Guidelines § II(C) (Aug. 2013) (minimum presumptive order calculated on first $250,000 of the parties' combined available income).[12] The judge declined to order any additional, discretionary support beyond the minimum presumptive order.

Turning to the wife's first contention -- that it was error to award retroactive child support in the absence of a finding (or evidence) that the child's needs were not being met during the period in question -- we are unpersuaded. The judge was not obligated to make such a finding when ordering the wife to pay the minimum presumptive order, because the amount of that order

---

[12] The combined available income threshold was increased to $400,000 in 2021. See Child Support Guidelines § II(C)(2) (Oct. 2021).

is presumed to be appropriate.  See Child Support Guidelines, Preamble (Oct. 2021) (noting rebuttable presumptions that "these guidelines apply in all cases establishing or modifying a child support order" and "that the amount of the child support order calculated under these guidelines is the appropriate amount of child support to be ordered").  "If the [wife] has been paying less than would otherwise have been required under the Guidelines, this 'necessarily implies that the child has been receiving insufficient support during the pendency of the complaint'" for modification.  Whelan v. Whelan, 74 Mass. App. Ct. 616, 627 (2009), quoting Boulter-Hedley v. Boulter, 429 Mass. 808, 812 (1999).  Here, the judge concluded that requiring the wife to pay retroactive child support based on the minimum presumptive order for the period in question was in the child's "best interests because no child support order has entered in this matter."  We discern no error in the judge's determination that retroactive support was in the child's best interests. Whelan, supra, quoting Boulter-Hedley, supra ("A judge is not required to make an order for modification retroactive, but 'absent a specific finding that retroactivity would be contrary to the child's best interests, unjust, or inappropriate,' these factors should be considered").

We are likewise unpersuaded by the wife's second contention:  that the amount of support ordered was excessive

18

because the judge should have attributed income to the husband. The judge found that both parties were unemployed at the time of trial; the wife had last worked outside the home twenty-nine years earlier, whereas the husband worked during the marriage but had not earned a salary since 2016, prior to the divorce. Between 2016 and 2018, the husband worked for a medical device company receiving "monetary compensation," however, that compensation ceased when the company (which is now dissolved) was unable to secure funding from investors in 2019.[13] The judge found that the husband had not sought employment since October 2019,[14] apart from commencing an online job search prior to the last day of trial in August 2022. The judge ultimately found that both parties were "unquestionably . . . capable of working," but the judge was unable to attribute income based on their respective earning capacities because "no vocational expert testified, nor did [the judge] hear sufficient credible evidence on the factors set forth in section II(E)(3) of the Guidelines to enable [the judge] to determine either party's earning capacity." The judge thus relied on the parties' actual incomes reported on their financial statements to calculate child support for the period in question.

---

[13] The husband also received stock options, which now appear to be worthless.

[14] At the time of trial, the husband was working approximately one day per week for a venture capital firm.

19

The wife claims, however, that the judge's finding that the husband had not looked for work since October 2019, along with her other findings regarding the husband's education and work history, were sufficient to determine his earning capacity.  We note, however, that attribution of income is not strictly mandatory -- even where, as here, the judge has found a parent capable of working.  See Child Support Guidelines § I(E)(1)-(2) (Oct. 2021) ("Income may be attributed where a finding has been made that either parent is capable of working and is unemployed or underemployed" [emphasis added]).  Moreover, while the judge's findings certainly touch on some of the relevant factors for determining the husband's earning capacity (such as his education, prior earnings, and work history), we see nothing in the record compelling such a determination where the judge found insufficient credible evidence as to all relevant factors.[15]  See Child Support Guidelines § I(E)(3) (Oct. 2021) (relevant factors for determining earning capacity include, but are not limited to, "the [parent's] . . . education, training, job skills, . . . past employment and earnings history, as well as the parent's

---

[15] Insofar as the wife contends that the judge could have at least attributed a full-time minimum wage income to the husband based on finding him capable of working, we note that the judge could have attributed the same income to the wife on the same basis, which likely would have resulted in a de minimis net change to the child support order.  Regardless, we conclude that the judge was within her discretion to decline to attribute income to either party under the circumstances presented here.

20

record of seeking work, and the availability of employment at the attributed income level, the availability of employers willing to hire the parent, and the relevant prevailing earnings level in the local community").  See also Johnston v. Johnston, 38 Mass. App. Ct. 531, 536 (1995) (judge's assessment of credibility "close to immune from reversal on appeal except on the most compelling of showings").

Conclusion.[16]  So much of paragraph 1 of the judgment/decree on the August 9, 2019 complaint for contempt (docket #328) that established the husband's alimony arrearage as $102,416.19, is vacated, and the case is remanded for further proceedings consistent with this memorandum and order.  In all other respects that judgment is affirmed.  The judgment/decree on complaint for contempt (docket #324), the judgment/decree on

---

[16] The husband's request for appellate fees and costs is denied.

complaint for contempt (docket #325), and the judgment/decree on complaint and counterclaim for modification (docket #326) are affirmed.

So ordered.

By the Court (Green, C.J., Milkey & Grant, JJ.[17]),

Assistant Clerk

Entered:  March 25, 2024.

---

[17] The panelists are listed in order of seniority.