JONES vs. JONES, 101 Mass. App. Ct. 673

 
 LISA M. JONES vs. ANDREW D. JONES (and a consolidated case [Note 1]).

101 Mass. App. Ct. 673
 January 6, 2022 - September 14, 2022

Court Below: Probate and Family Court, Norfolk Division
Present: Green, C.J., Sullivan, & Henry, JJ.

 

No. 20-P-1217.

Divorce and Separation, Modification of judgment, Separation agreement, Alimony, Child support. Practice, Civil, Declaratory proceeding, Contempt, Attorney's fees.

This court concluded that, in considering an alimony award under a separation agreement that has been merged into a judgment of divorce, a judge must interpret the separation agreement according to the intent of the parties in a manner consistent with the over-all purposes of G. L. c. 208, and that where the separation agreement is ambiguous, the governing consideration is the intent of the parties to the separation agreement as determined by objective evidence; accordingly, a Probate and Family Court judge did not err in his ultimate construction of a separation agreement, in that he paid careful and close attention to the evidence and, based on the negotiations between the parties that led to the separation agreement, determined that the inherently ambiguous term "any manner of bonus" did not include stock options or preferred shares. [681-684]

In a civil action in which the wife sought to enforce the husband's obligations to pay alimony and child support and the husband sought to decrease such obligations, the Probate and Family Court judge did not abuse his discretion in determining, based on detailed and precise factual findings, that the wife failed to show that a deviation from the durational limits of the Alimony Reform Act, G. L. c. 208, § 49 (b), was in the interest of justice, or in ordering the retroactive repayment of alimony received by the wife since the date on which the husband's obligation had ceased [684-686]; however, remand was necessary to permit the judge to explicitly consider all the husband's income, including cash received from the exercise of stock options or preferred stock, in awarding child support, and to reconsider whether that award of child support should apply retroactively or prospectively [686-687].

In civil proceedings subsequent to a divorce action, a Probate and Family Court judge did not err in finding the wife in contempt and liable for payment of the husband's attorney's fees, where she enrolled the children in private school without telling the husband, in clear and undoubted disobedience of the separation agreement's command to notify the husband, discuss the 

 Page 674 

matter, and make the decision jointly. [687-688]

Complaint for divorce filed in the Norfolk Division of the Probate and Family Court Department on April 13, 2005. 

 Complaint in equity filed in the Norfolk Division of the Probate and Family Court Department on August 17, 2011. 

 After consolidation, a complaint for modification, filed on November 2, 2010, was heard by George F. Phelan, J.; a complaint in equity was heard by him; a complaint for contempt, filed on April 7, 2017, was heard by him; and a motion for attorney's fees, filed on May 30, 2019, was also heard by him.

 Richard M. Novitch (Dea Ilia Coka & Gary Owen Todd also present) for the wife.

 Gayle Stone-Turesky (Judith McKinnon & Svana Calabro also present) for the husband.

 SULLIVAN, J. In this appeal from multiple judgments, [Note 2] the wife raises numerous issues, namely (1) whether the husband's stock options, issued after the divorce, should have been treated as bonus income, once exercised, for purposes of alimony; (2) the propriety of the retroactive termination of the husband's alimony obligation; (3) whether income received from the exercise of stock options or preferred shares should have been considered for purposes of child support; and (4) whether the wife was in contempt and liable for payment of the husband's attorney's fees for applying to private schools for the children, and enrolling the children, without consulting with the husband.

 The primary issue on appeal is the meaning of the phrase "any manner of bonus" in the parties' separation agreement, which merged into the judgment of divorce nisi. We write today to 

 Page 675 

emphasize what may be obvious -- the importance of clear drafting regarding the division of income, bonuses, stock options, and other forms of executive or deferred compensation in separation agreements.

 Executive compensation is a complex topic, one which frequently arises in high-asset divorce matters. Executive compensation plans and agreements must take into consideration matters as diverse as executive retention, fair and competitive compensation, reporting obligations, tax considerations, and the desirability of the sale or the takeover of the company (or lack thereof). While the executive compensation agreements themselves may provide background relevant to an understanding of the terms of the separation agreement, and the parties' understanding of the compensation scheme at the time they negotiated the terms of their agreement, it is the intent of the parties to the divorce, not the intent of the company -- or even the labels attached to various forms of compensation by the company -- that ultimately governs. In this case, after a careful and thorough review, the judge found that by referring to "any manner of bonus" the parties did not include stock or stock options in the definition of "bonus." [Note 3] That finding was fully supported by the evidence and did not constitute an error of law as to the definition of "bonus."

 We also conclude that the judge did not abuse his discretion or err as a matter of law with respect to his treatment of the husband's alimony obligation, or with respect to the finding of contempt against the wife. However, because the parties may not define "bonus" in such a way as to limit the husband's obligation to pay child support, we remand for reconsideration of child support. Accordingly, we affirm in part and vacate in part.

 Background. We summarize the procedural history, reserving particular facts for later discussion. The parties were divorced by a judgment of divorce nisi dated April 11, 2006, which incorporated their separation agreement of the same date, the relevant provisions of which merged with the judgment. In November 2010, the wife filed a complaint for modification seeking increased support. In February 2011, the husband filed a counterclaim 

 Page 676 

for modification, which he later amended, seeking a reduction in his support obligations.

 In August 2011, the wife filed a complaint for declaratory relief seeking a determination whether $1 million received by the husband from a former employer was a bonus under the separation agreement, thus requiring him to pay fifteen percent to the wife as alimony and sixteen percent to the wife as child support. The husband counterclaimed in equity. The parties filed cross motions for summary judgment, and the judge entered summary judgment in favor of the wife, concluding that the $1 million received by the husband was a bonus and ordering the husband to pay $310,000 to the wife. The husband appealed, and a panel of this court vacated the judgment and remanded for further proceedings in an unpublished decision, concluding that summary judgment was inappropriate as there was a triable issue of fact as to the meaning of the word "bonus" because the word "bonus" as used in the separation agreement, as well as the dictionary definition of the word "bonus," were ambiguous. The panel instructed that the parties could submit extrinsic evidence of intent. See Jones v. Jones, 87 Mass. App. Ct. 1110 (2015). [Note 4]

 The parties also filed complaints for contempt, which were consolidated with the modification action and the declaratory relief matter. The trial commenced in May 2017. On May 3, 2019, the judge issued findings and four separate judgments that, among other things, (1) declared that the agreement's bonus provision did not apply to stock or stock options, and pertained only to "performance-based incentive payments"; (2) retroactively terminated the husband's alimony obligation, prospectively increased his child support obligation, and eliminated his obligation to contribute to the children's college funds; and (3) adjudicated the wife guilty of contempt for enrolling the parties' children in private school and ordered her to pay the husband's attorney's fees in connection with that contempt complaint. This appeal followed.

 Discussion. 1. Bonus. a. Facts. We summarize the judge's factual findings, supplemented by the evidence in the record consistent with those findings. During the marriage, the parties enjoyed a lifestyle the husband described as middle income and the wife described as upper income. The wife did not work during 

 Page 677 

the marriage but returned to work after the divorce as a project manager at a large professional services company. The judge found that both parties were able to maintain their previous lifestyle, however characterized.

 During the marriage, the husband worked at several companies where his compensation consisted of base salary, cash bonuses, and stock options. The separation agreement provided, in relevant part, that the husband would pay $900 in alimony per week and $334 in child support per week, along with additional child support and alimony equivalent to "[thirty-one percent] of the gross amount of any manner of bonus paid by his employer, to him, within [ten] days of his receipt of said payment, [sixteen percent] as child support and [fifteen percent] as alimony." [Note 5] The phrase "any manner of bonus" was not defined in the agreement.

 The parties negotiated the alimony and child support provisions, including the bonus provision, of the separation agreement over many months starting in 2005 and culminating from January 2006 to April 2006. Written proposals were exchanged. The judge found, and the record supports the finding, that the husband objected at every turn to including in the bonus provision any interest in stock options that were granted after the separation. [Note 6] The wife requested a percentage of any "income allotment" going forward as child support. The husband rejected this proposal. The wife also proposed that she receive a percentage "of any manner of bonus, incentive payment or other type of lump sum payment by his employer, to him." The husband instructed his lawyer that he would agree to pay alimony and child support on cash bonuses and not on any other form of compensation, based on his belief (or desire) that options granted or exercised after the separation were earned by him alone and not attributable to the marriage. [Note 7] In each instance, the language was removed. As previously noted, 

 Page 678 

the final language in the separation agreement provided only for division "of any manner of bonus."

 In 2007, approximately one year after the divorce, the husband signed an offer letter with Integrity Interactive Corporation (Integrity), which provided for $200,000 in annual compensation, a bonus of up to forty percent of his salary, and incentive stock options. He signed a stock option agreement, which granted him an option to purchase 106,883 shares of common stock. The stock options were subject to an accelerated vesting schedule if Integrity was sold or merged, and the husband was, with some exceptions, required to exercise those options within three months of the termination of his employment.

 In 2010, Integrity's chief executive officer, Thomas Anderson, endeavored to increase the husband's compensation to make up for a perceived inadequacy in the husband's initial grant of stock options. At the time that assessment was made, however, Integrity was in the process of being sold, thus preventing the grant of additional stock options. [Note 8] Anderson prepared a board presentation that proposed to give the husband "additional compensation" in the event of the sale of the company within six months. The additional compensation was described as a severance package, as the acquiror had its own management team and the husband would lose his job. The package included a "one-time severance payment" of $1 million, minus all proceeds realized by the husband from the exercise of the stock options received under the initial grant, to "true up" any deficiency in the original grant. Upon the sale of Integrity, the husband received a total of $1 million in income, comprising $628,453 net from the exercise of his stock options and a one-time severance payment of $371,457.

 The compensation arrangement for another employee who was receiving cash only was described as a "bonus." The initial draft of a corporate resolution describing the approved payments, which was drafted by outside counsel, also described the payment as a bonus for both employees. Anderson rejected this draft and requested that the husband's resolution be revised to state that the husband's severance payment was "additional compensation," as 

 Page 679 

was described to the board. The wife pointed to these facts to suggest that the nomenclature was being manipulated by the husband to avoid his obligations under the agreement, and that the $1 million payment was a bonus. The judge, however, upon review of the relevant documents, credited Anderson's testimony that removing the word "bonus" was important for "a whole host of governance and tax reasons" and that Anderson was not influenced by the husband in making this request.

 In or around October 2015, the husband became the chief financial officer (CFO) of another company, where he purchased preferred shares that the wife claimed were sold less than two years later, resulting in income of over $2.74 million to the husband.

 At trial, the wife testified that she reviewed the drafts, spoke with her attorney, and understood the phrase "any manner of bonus" to mean any additional compensation received by the husband. She understood the concept of stock options but testified that she had no experience with them before 2005. The judge did not find the latter assertion credible, as the wife had a master's degree in business administration as well as a bachelor's degree in finance, she knew the husband had options from other companies during the marriage, and she was represented by counsel. The wife offered the dictionary definition of the word "bonus," which the judge did not credit because neither party testified that they relied on a dictionary definition in negotiating the separation agreement. [Note 9]

 The husband (who was a chartered accountant as well as a CFO) testified that bonus income is a form of incentive payment tied to performance metrics, and that a bonus becomes payable upon reaching those metrics, but that stock options (in whatever form) are an opportunity to purchase equity. Equity carries risk. If the company does well, the price of the stock rises, and when the conditions precedent to vesting and sale are triggered, the employee awarded the options may fare well. But if those conditions are not satisfied, or the price drops below the strike price, the options are under water and the employee will reap no gains.

 The husband called two experts at trial, a tax expert and a compliance expert, to testify to the different types of executive 

 Page 680 

compensation. According to the tax expert, stock options are an equity grant and the term "bonus" is not used to describe an equity grant. She also testified that once sold, stock options that are held for the requisite period under the tax laws obtain favorable capital gains tax treatment. In the husband's case, the sale of the company prompted the early exercise of the options, and thus a disqualifying disposition. The income derived from the sale of the options therefore appeared on a W-2 as income, as would a bonus. In her view, this did not alter the treatment of the options as a capital asset for tax purposes, an opinion on which the judge did not rely. [Note 10] According to the compliance expert, for reporting purposes, the options in this case would fall under the Securities and Exchange Commission's definition of an option award, as opposed to a bonus.

 The judge took the expert evidence, deemed both experts "credible and capable," and gave their testimony "some weight" regarding the types of executive compensation at play and the industry understanding of specific terms such as "bonus" and "stock option." The judge did not, however, give much weight to either the manner in which the compensation was labeled by the company or the expert opinions. Neither expert witness had any understanding of the parties' negotiations, and they were unable to testify to the intent of the parties. Rather, the judge looked to the understanding of the parties to the agreement. Based on the negotiating history of the parties, the husband's unequivocal rejection of the wife's proposals to garner an interest in stock options, and the "progressively narrower" definitions in each succeeding draft, the judge found that the phrase "any manner of bonus" was intended "to include only incentive payments, typically paid in cash, and not stock options, preferred shares, or any other type of equity."

 b. Scope of the issue. As an initial matter, the wife claims on appeal that her modification complaint was intended to include a general request for increased support, not simply a percentage of the proceeds of the stock options, which she characterized as a 

 Page 681 

bonus. The plain language of the complaint for modification stated that the changed circumstance was the exercise of stock options; the relief requested was tied to that changed circumstance. The judge found that the "[w]ife testified at trial that she filed her complaint because she believed that she was entitled to [thirty-one percent] of [the] [h]usband's income from receiving his stock options, not because she wanted an additional weekly amount of alimony." [Note 11] The judge did not abuse his discretion or err as a matter of law in deciding that, for purposes of alimony, the issue before him on the wife's modification complaint (and declaratory judgment action) was solely whether the stock options were bonus income. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). [Note 12]

 c. Definition of "bonus" in the separation agreement. We review the judge's interpretation of the merged agreement under traditional principles of contract law. "Although a merged provision 'does not survive the judgment as a binding contract, we nevertheless will "review the [judge's] findings [and rulings] to determine whether the judge gave appropriate consideration to the parties' intentions as expressed in their written agreement."'" Mandel v. Mandel, 74 Mass. App. Ct. 348, 351 (2009), quoting Cooper v. Cooper, 62 Mass. App. Ct. 130, 134 (2004).

 Whether a separation agreement is ambiguous is a question of law. If a separation agreement "is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one," the language is ambiguous, and resort may be made to extrinsic evidence. Bercume v. Bercume, 428 Mass. 635, 641 (1999).

 This case was remanded because the words "any manner of bonus" are inherently ambiguous. There are many permutations of bonuses, such as hiring bonuses, annual bonuses, retention bonuses, and bonuses based on individual performance, team performance, and company-wide performance, to name a few. There are also myriad forms of executive compensation that may or may not fit within the definition of the word "bonus" contemplated 

 Page 682 

by parties to a separation agreement. For example, a company could grant stock options, preferred stock, phantom stock, restricted stock units, or other forms of executive compensation. Whether the company labeled this compensation as a form of bonus, [Note 13] it would be up to the parties to the separation agreement to define whether and under what conditions those forms of compensation would be a bonus within the meaning of the separation agreement, or to otherwise determine whether to divide those income streams.

 The extrinsic evidence in this case highlights the complexity of executive compensation schemes and the importance of precision in drafting separation agreements. As this case ably demonstrates, the word "bonus" may have one meaning for the parties to the separation agreement, a second to the parties to the executive compensation agreement, [Note 14] a third for tax purposes, [Note 15] and a fourth for reporting and compliance purposes. [Note 16] The experts on tax and regulatory compliance testified to their understanding of the word "bonus" as defined by Federal statutes. But in a divorce proceeding, our statutory guidepost is G. L. c. 208, and it is that statute and the intent of the parties to the separation agreement that matters. See Wooters v. Wooters, 74 Mass. App. Ct. 839, 843 (2009) (noting that parties may restrict definition of compensation, but absent such restriction, "common sense dictates that the income realized from the exercise of stock options should be treated as gross employment income" and that as matter of policy "if the exercised stock options were not deemed income for alimony purposes, a person could potentially avoid his or her obligations merely by choosing to be compensated in stock 

 Page 683 

options instead of by a salary"). [Note 17]

 We therefore hold that in considering an alimony award under a separation agreement that has been merged into the judgment, the judge must interpret the separation agreement according to the intent of the parties in a manner consistent with the over-all purposes of G. L. c. 208. See Cavanagh v. Cavanagh, 490 Mass. 398, 413 (2022). We also hold that where the separation agreement is ambiguous, the governing consideration is the intent of the parties to the separation agreement as determined by objective evidence. See id.; Hamouda v. Harris, 66 Mass. App. Ct. 22, 25-26 (2006). As was the case here, expert opinion testimony may be considered for purposes of providing the judge with a greater understanding of the relevant background but is not dispositive. The intent of the parties must be decided on all the facts and circumstances. [Note 18] Each case also must be decided in the context of the governing statute, G. L. c. 208, which requires us to undertake separate consideration of the award of alimony and child support using distinct standards. See Cavanagh, supra at 422; Hoegen v. Hoegen, 89 Mass. App. Ct. 6, 11 (2016).

 With these principles in mind, we turn to the facts of this case. The judge paid careful and close attention to the evidence and, based on the negotiations between the parties that led to the separation agreement, determined that "any manner of bonus" did not include stock options or preferred shares. [Note 19] The wife sought to include a broader definition of bonus compensation to include a specific reference to stock options. Those proposals were rejected, and language that arguably might have covered the other 

 Page 684 

forms of compensation was removed from the signed separation agreement. [Note 20] Contrast Wooters, 74 Mass. App. Ct. at 843 ("In fact, here, the judge properly observed that there was ample opportunity for the parties to restrict the definition of 'gross annual employment income,' and if the parties wished to do so, they should have done that at the time of divorce"). Unlike Wooters, the judge found that the parties here did restrict their definition of the phrase "any manner of bonus." He also found that the husband did not manipulate the terms of his separation from Integrity for purposes of alimony avoidance. [Note 21] The judge's factual findings were supported by the evidence, and he did not err in his ultimate construction of the separation agreement. [Note 22] The wife was not entitled under the separation agreement to a percentage of exercised options and the "true-up" of the Integrity shares, or to a percentage of any later award of options once exercised as alimony.

 2. Alimony and child support. The wife filed a complaint seeking to enforce the husband's obligation to pay alimony and child support on his bonuses, and the husband filed a counterclaim, 

 Page 685 

which he later amended, seeking to decrease his alimony and child support obligations.

 a. Alimony. With respect to the alimony ruling, the wife's argument for a retroactive increase was premised on the claim that the judge's treatment of the husband's stock options and preferred shares was erroneous; as discussed above, that was the sole basis of her complaint for modification, and we have rejected her contention that stock options and preferred shares were included in the phrase "any manner of bonus."

 The husband's amended counterclaim rested on several grounds, the most salient here being the durational limits of the Alimony Reform Act (act). See G. L. c. 208, § 49 (b); St. 2011, c. 124, § 4 (b) (uncodified provision). See also George v. George, 476 Mass. 65, 68 (2016); Rodman v. Rodman, 470 Mass. 539, 544 (2015); Chin v. Merriot, 470 Mass. 527, 536 (2015). The judge found that the marriage was of 116 months' duration and concluded that the husband's alimony obligation was "[sixty percent] of the length of the parties' marriage, or 69.6 months." See G. L. c. 208, § 49 (b) (2). He also found that the wife was employed, earning approximately $100,000 (or more) annually, that both parties had the capacity to work and acquire future income, and that the wife failed to meet her burden to show that deviation was required in the interest of justice. He determined that a retroactive termination of alimony was inappropriate for the period prior to April 28, 2014, but that the husband's alimony obligation ceased as of April 28, 2014, the date he served his amended counterclaim modification, under the durational limits of the act. See id. He ordered the wife to repay alimony received since April 28, 2014, including the percentage of bonuses received as alimony.

 The wife contends that the modification is inherently unfair and designed to punish her because the husband enjoys a far greater income than she, and because she is saddled with repaying the alimony while the husband was ordered to pay increased child support, discussed infra, on a prospective basis. She also claims that the judge failed to make required findings regarding the marital lifestyle, was vague and imprecise in his other findings, and placed too great a financial burden on her.

 As to the termination of alimony, upon reaching the durational limits it was the wife's burden to show that a deviation from the act was warranted. See George, 476 Mass. at 70. We see no abuse of discretion in the judge's ruling in this regard. The judge's 

 Page 686 

factual findings were comprehensive. He adopted the income levels reported on the parties' respective financial statements. He explicitly found that the wife's income had increased by $2,306.50 weekly (exclusive of alimony and child support) since the time of the last modification judgment in 2009, and that in 2018 the wife's weekly income, including alimony and child support, was $3,553.50 while the husband's was $3,913.20. He considered every factor under G. L. c. 208, § 53 (e). The factual findings were detailed and precise and amply supported the judge's determination that the wife did not show that a deviation was in the interest of justice. The order for retroactive repayment fell within the judge's discretion. [Note 23]

 b. Child support. At the same time, the judge prospectively increased the husband's child support obligation from $334 per week to $838 per week, based on the "full amount" of income received by the husband. The judge concluded that the conditions that gave rise to the agreed-upon amount in the separation agreement no longer existed because the wife was no longer receiving alimony and was working. The judge further concluded that the Massachusetts Child Support Guidelines (Guidelines) applied, resulting in an inconsistency between what the husband was then paying and what he should have been paying under the Guidelines where (1) both children were eligible for child support, including the child who was over eighteen years of age and (2) the husband's child support obligation should have been based on the full amount of the parties' incomes, including income in excess of $250,000. He declined to order retroactive child support, finding that the historical payments served the best interest 

 Page 687 

of the children, who received adequate support, and because the parties had negotiated child support and alimony together.

 As a matter of statute and policy, markedly different considerations apply to child support from those that apply to alimony. The parties' agreement, which excluded stock options and preferred stock from the definition of the word "bonus," means that the husband was not obligated to pay a particular percentage of the value of exercised options as child support, but the agreement does not control when determining what income is available for child support. "[P]arents may not bargain away the rights of their children to support" (citation omitted). Cavanagh, 490 Mass. at 409. Accord Hoegen, 89 Mass. App. Ct. at 11. As a result, the income received from the exercise of options or the sale of preferred stock should have been considered in determining the husband's total income for purposes of child support.

 Here, the judge's findings state that he considered the "full amount of the parties' income," as the Guidelines permit, but it does not appear on this record that he considered the cash received from the exercise of stock options or preferred stock as income. His findings regarding the husband's income were limited to wages, bonuses, and dividends. The findings do not mention the options or preferred stock in discussing the husband's over-all income, and do not explain how he arrived at the figure of $838 in child support per week. "There is no indication" in the judge's otherwise comprehensive, thoughtful, and well written decision "that he recognized that he had the discretionary authority" to consider the income derived from the exercise of options or preferred shares in awarding child support. Carter v. Lynn Hous. Auth., 450 Mass. 626, 635 (2008) ("Failure to exercise discretion is itself an abuse of discretion" [citation omitted]).

 Accordingly, it is necessary to remand this matter to permit the judge to explicitly consider all the husband's income in awarding child support, and to reconsider whether that award of child support should apply retroactively or prospectively. We emphasize that the ultimate determination of the amount of child support, as to which we express no opinion, is committed to the sound discretion of the judge.

 3. Contempt. The wife contends that the judge abused his discretion when he found her in contempt for enrolling the children in private school without telling the husband. To constitute civil contempt there must be "clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, 

 Page 688 

petitioner, 454 Mass. 837, 853 (2009). "We review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error." Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).

 The parties' separation agreement provided that "[a]ll major decisions pertaining to the education, discipline, health, and welfare of the children shall be made jointly by both parties after reasonable notice and discussion." This provision was a "clear and unequivocal command." It provided the wife and the husband with "adequate notice of the required . . . activity." Lynch v. Police Comm'r of Boston, 51 Mass. App. Ct. 772, 776 (2001).

 The wife testified that she did not tell the husband that the children applied to and were enrolled in private school. This constituted clear and undoubted disobedience of the separation agreement's command. See Cabot v. Cabot, 55 Mass. App. Ct. 756, 769 (2002). The fact that the husband learned of these plans from the children after they were admitted did not excuse the wife from her obligation under the agreement to notify the husband, discuss the matter, and make the decision jointly.

 Having determined that the judge did not err in finding the wife in contempt, we affirm the award of attorney's fees. See Martinez v. Lynn Hous. Auth., 94 Mass. App. Ct. 702, 708 (2019) ("As a matter of law, the awarding of attorney's fees and costs is an appropriate element of a successful civil contempt proceeding" [citation omitted]). [Note 24] We also award attorney's fees pertaining to the contempt proceeding on appeal. [Note 25]

 Conclusion. So much of the May 3, 2019 modification judgment as modified the award of child support is vacated, and the 

 Page 689 

matter is remanded for further proceedings consistent with this decision. The vacatur is stayed, and the award of child support shall remain in full force and effect, pending issuance of a decision on remand. In all other respects, the May 3, 2019 judgments and the September 13, 2019 orders are affirmed.

So ordered.

FOOTNOTES
[Note 1] The consolidated case involves the same parties. 

[Note 2] The judgments were a modification judgment, a judgment on the wife's complaint for declaratory relief, and two judgments on the husband's complaints for contempt. Specifically, the wife timely appeals from the following judgments dated May 3, 2019: (1) a modification judgment that retroactively terminated the husband's alimony obligation, prospectively increased the husband's child support obligation, and eliminated the husband's obligation to contribute to the children's college funds; (2) a judgment on the wife's complaint for declaratory relief and the husband's counterclaim in equity; (3) a judgment on the husband's April 7, 2017 complaint for contempt; and (4) a judgment on the husband's December 6, 2017 complaint for contempt. The wife also appeals from two September 13, 2019 orders: (1) an order denying her motion to stay pending appeal; and (2) an order requiring her to pay the husband's attorney's fees. In this appeal, the wife raises no arguments regarding the judgment on the husband's December 6, 2017 complaint for contempt or the order denying her motion to stay pending appeal. 

[Note 3] The judge also limited the phrase "any manner of bonus" to "performance-based incentive payments." This case does not call on us to decide whether this limitation was correct, and we do not decide that question. As we discuss later in this opinion, the word "bonus" is a general term that may encompass bonuses, such as hiring bonuses, which are not performance based. 

[Note 4] The panel also instructed that the judge could consider the parties' postdivorce behavior. There was little probative evidence on this point, and the judge ultimately did not take postdivorce behavior into account. 

[Note 5] By judgment entered October 7, 2009, the husband's alimony obligation was reduced to $600 per week. 

[Note 6] The parties agreed to a limited waiver of privilege for purposes of this motion. The lawyers who negotiated the agreement represented that they had no current memory of the negotiations. The judge's findings were based on the testimony of the parties, e-mail messages between the lawyers who negotiated the agreement, the deposition testimony of the wife's divorce counsel, e-mail messages between the husband and his divorce counsel, and comments made by the husband to his divorce counsel on the various drafts. The wife testified that she did not have her file, a claim that the judge found not to be credible. The wife's divorce counsel testified at a deposition that he had returned it to her. 

[Note 7] As part of the marital property division, the parties divided equally the stock options the husband acquired from Seagram Company during the marriage. At the time the parties executed the agreement, the husband was employed by TrueAdvantage; he ultimately retained all his stock options from TrueAdvantage, as they were determined to be without value. Other previously granted options had already been exercised. 

[Note 8] Anderson testified that there would be negative tax consequences to the company. 

[Note 9] As previously noted, a panel of this court had already rejected a dictionary definition as sufficient to define the word "bonus." The judge also noted that the definition offered postdated the agreement. 

[Note 10] Indeed, there appears to be considerable tension between the expert's categorical opinion and cases interpreting the circumstances under which G. L. c. 208, § 53 (c) (1), inserted by § 3, applies to the income derived from the exercise of unvested shares not previously divided. See Ludwig v. Lamee-Ludwig, 91 Mass. App. Ct. 36, 39 (2017); Wooters v. Wooters, 74 Mass. App. Ct. 839, 843 (2009). 

[Note 11] The wife testified that the purpose of the modification complaint was to obtain thirty-one percent of the $1 million that the husband had received. 

[Note 12] Because of the limited nature of the issue on appeal, we have no occasion to consider and express no opinion whether the circumstances presented provide a basis for modification, or whether the income derived from the exercise of the options should be considered for purposes of alimony. See Ludwig, 91 Mass. App. Ct. at 38, Wooters, 74 Mass. App. Ct. at 841-843. 

[Note 13] While an incentive-based cash bonus based on performance metrics may be desirable in certain circumstances, there may also be situations in which a bonus in the form of equity (i.e., stock options) would be preferable. Conversely, a cash-strapped start-up company may not be in a position to give a cash bonus, but could give an equity stake as a performance bonus. 

[Note 14] There are also competing interests at stake. The interests of company management in trying to retain key executives while negotiating a sale may or may not align with the interests of the executive, and the interests of the former spouse who wants to maximize alimony and child support may or may not align with that of either the company or the former spouse. 

[Note 15] See 26 U.S.C. § 409A. See also B. Overton & S.E. Stoffer, Executive Compensation Answer Book §§ 1:31-1:41, 6:11-6:21, 10:1-10:106 (9th ed. 2016). 

[Note 16] See 15 U.S.C. §§ 7241 et seq. See also Executive Compensation Answer Book §§ 18:1-18:5, 18:15-18:34. See generally M.A. Borges, Executive Compensation and Disclosure Rules (3d ed. 2019). 

[Note 17] As Wooters demonstrates, where the parties do not agree, and the case is tried, it is for the judge, in his or her discretion, to determine what forms of compensation are divided and how, and to define terms, including "bonus," in making that division. 

[Note 18] In this case, for example, the parties agreed on a fixed dollar amount of alimony and child support. The bonus alone was subject to a percentage allocation. This case is thus distinguishable from those where alimony or child support is based on a percentage of annual income. See Ludwig, 91 Mass. App. Ct. at 37 n.4 (alimony provisions required payment of percentage of annual base salary, plus "additional alimony" calculated on sliding-scale percentage of "bonuses and other forms of compensation"); Wooters, 74 Mass. App. Ct. at 843 (holding that stock options, once exercised, constituted component of "gross annual employment income, . . . [a] term [that] can plausibly encompass the income obtained from the exercise of stock options, as long as the definition is not limited by the parties"). 

[Note 19] The judge also analyzed the husband's participation in an "equity incentive plan" at a second company and reached the same conclusion. 

[Note 20] As noted above, see note 17, supra, our analysis is limited to the construction of the separation agreement, and in no way affects a judge's ability to consider division of stock options, or the income derived from the postdivorce exercise of stock options, at a trial if the circumstances warrant. 

[Note 21] Implicit, if not explicit, in the wife's argument is the contention that the stock options really were a bonus, as evidenced by the original draft of the corporate resolution, which Anderson asked to be changed, and that the husband manipulated the language of the documents to conceal the true nature of the severance package. See generally Ruml v. Ruml, 50 Mass. App. Ct. 500 (2000) (manipulation of assets). We have emphasized that executive compensation plans should not be used to shield assets in determining support obligations. See Hoegen, 89 Mass. App. Ct. at 10; Wooters, 74 Mass. App. Ct. at 843. The Supreme Judicial Court has recently made the same observation with respect to child support. See Cavanagh, 490 Mass. at 424. Here, however, the judge found that Anderson had the corporate resolution redrafted for reasons having to do with corporate governance and taxation, and that the husband did not influence him in that regard. We defer to the judge's credibility determination and findings of fact on appeal. See Casey v. Casey, 79 Mass. App. Ct. 623, 633 (2011); Comins v. Comins, 33 Mass. App. Ct. 28, 34 (1992). See also Mass. R. Dom. Rel. P. 52(a). 

[Note 22] Because of the limited nature of the issue before us, this case does not call on us to decide how trial judges may exercise their equitable powers consistent with G. L. c. 208 and Wooters in cases where a strict application of the settlement agreement would appear to work an inequity with respect to alimony. The modification proceeding before us was limited to the definition of "any manner of bonus." 

[Note 23] The judge did not credit the wife's testimony regarding a diminished lifestyle and found that she could not offer a credible explanation for inaccuracies on her tax return. He also noted that certain expenses had increased markedly. For example, she listed expenses of $539 per week for house supplies, as opposed to seventy-five dollars per week in 2009. In view of these credibility findings, we cannot say that the judge abused his discretion in determining that the wife had adequate funds to make repayment. The wife claims on appeal that the judge's credibility findings are arbitrary and capricious because he improperly considered the credibility findings of a different judge who presided over a previous modification action in 2009. We have reviewed the disputed finding, which quotes the 2009 judgment. The 2009 judgment said that the wife was "evasive" and failed to disclose her income on her tax returns in the year the income was earned, but which attributed $300 per week in income to the wife. The judge's recitation of the judgment did not constitute the adoption of another judge's credibility finding. 

[Note 24] The parties' separation agreement also contained the following provision: "If either party shall breach . . . any of his or her obligations under this [a]greement and is adjudged to be in contempt of court, then the party in contempt shall be required to pay the counsel fees and expenses incurred by the other party in enforcing this agreement." 

[Note 25] In all other respects, the husband's request for attorney's fees is denied. Within fourteen days of the date of the rescript, the husband may apply for reasonable appellate attorney's fees associated only with briefing the contempt issue on appeal. See Fabre v. Walton, 441 Mass. 9, 10 (2004). The application should address the nature of the case and the issues presented; an itemization of the time and labor required; the result obtained, the experience, reputation, and ability of the attorneys; and the usual hourly rate charged for similar services by other attorneys in the same area. The wife will then have fourteen days to file an opposition to the amounts requested. See id. 

 
 Home/Search 
 Table of Cases by Citation
 Table of Cases by Name 
 

 Commonwealth of Massachusetts. Trial Court Law Libraries. Questions about legal information? Contact Reference Librarians.