NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1358

RICHARD E. SAVOY

vs.

GERALDINE S. SAVOY.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a multiday trial, a judge of the Probate and

Family Court (contempt judge) issued a judgment (contempt

judgment) adjudicating Richard E. Savoy (husband), the former

spouse of Geraldine S. Savoy (wife), guilty of civil contempt

for failing to timely comply with several orders pertaining to

the division of assets set forth in the March 2019 judgment of

divorce nisi (divorce judgment) and the June 2021 amended

judgment of divorce nisi after remand (amended divorce

judgment).  The contempt judge also awarded the wife statutory

interest, attorney's fees and costs, and ordered the husband to

---

[1] As is our custom, we use the names appearing on the complaint for divorce, notwithstanding that the wife has resumed using her former surname of Atkins.

reimburse the wife for her portion of fees paid to a special master.  The husband appeals from the contempt judgment on several grounds.  We reverse in part and affirm in part.[2]

Background.  The parties have litigated various aspects of the end of their marriage for several years and, consequently, the factual and procedural history is lengthy.  For the purpose of this appeal, we include only those facts necessary to provide context for our discussion.

The divorce judgment, which was issued on March 19, 2019 by a different judge (divorce judge), provided in relevant part that (1) the husband shall pay $209,000 to the wife for her share of the marital home equity; (2) the husband shall remove the wife from all encumbrances related to the marital home by July 1, 2019, or, if he is unable to do so, make arrangements to sell the home; (3) the parties' joint Capital One account shall be closed by May 1, 2019, and the remaining balance shall be transferred to the wife; (4) the parties' jointly held corporate

---

[2] After the husband filed a notice of appeal, the wife obtained leave to file a motion to amend the contempt judgment and findings of fact.  The motion was allowed by the trial judge to the extent that it sought correction of a scrivener's error in the amount of attorney's fees awarded to the wife (the amount set forth in the findings of fact did not match the amount contained in the judgment).  The judge found that the correct amount was $178,810, and not $153,810.  Amended findings of fact issued on September 13, 2024, nunc pro tunc to the original date of July 14, 2023.  The amount of attorney's fees was the only substantive change made to the findings of fact, and no changes were made to the judgment.

stocks in Arkema, Medtronic, and Regions shall be divided sixty percent to the husband and forty percent to the wife, and the accounts shall be closed by July 1, 2019; (5) the husband shall ensure that fifty percent of the marital coverture[3] portion of his retirement accounts (including his Bank of America Defined Benefit Plan, Ameritrade IRA, Fidelity Rollover IRA, and Fidelity Roth IRA) is transferred to the wife by July 1, 2019; (6) the husband shall transfer forty percent of his investment account assets in Ameritrade, Wells Fargo, Fidelity BPFH, and JP Morgan / Becton Dickson to the wife by July 1, 2019; (7) the wife shall transfer sixty percent of her Fidelity stock account to the husband by July 1, 2019; and (8) both parties shall divide their remaining personal property including gold coins, art, antiques, and home furnishings within thirty days of the judgment.

The husband appealed from the divorce judgment and, while his appeal was pending, filed various motions to stay the judgment, none of which were successful.[4] During this time, the

---

[3] The divorce judgment originally omitted the word "marital" from the phrase "marital coverture," which appeared to be a scrivener's error that was corrected in the amended divorce judgment.

[4] An appeal does not stay a division of marital assets. See Mass. R. Dom. Rel. P. 62(g)(i). The husband's motions for a stay were denied by the trial judge and by a single justice of this court.

husband made little to no progress in complying with the property division described above.  Consequently, the wife filed two complaints for contempt:  one on July 22, 2019 (first complaint), and another on February 13, 2020 (second complaint).[5]

---

[5] The judge described the allegations set forth in the wife's first complaint as follows:

"[the husband] (i) [f]ailed to make a lump sum payment to [the wife] of $209,000; (ii) [f]ailed to remove [the wife] from mortgage and home equity line by July 1, 2019 and further failed to place the property on the market for sale; (iii) [r]emoved $5,000 from the Capital One joint account on April 25, 2019; (iv) [f]ailed or refused to divide the Arkema, Medtronic and Regions stocks transferring [forty percent] in kind to [the wife]; (v) [f]ailed to transfer in kind a [forty percent] interest to [the wife] of [the husband's investment accounts]; and (vi) [f]ailed or refused to provide [the wife] with account information so that she may comply with paragraph 14 of the [divorce] [j]udgment."

According to the judge, the second complaint alleged as follows:

"[the husband] [f]ailed to divide the Bank of America Defined Benefit Plan equally with [the wife].  [The husband] disclosed this asset on his Financial Statement with a value of $141,593 and the Court made a Finding (75) of the same amount based upon [the husband's] representations to the Court.  On March 18, 2019, [the husband] converted and transferred this asset to an annuity thereby changing the nature of the asset and increasing his share while reducing [the wife's] interest in the asset. [The husband] also failed to seek timely relief from the Court once he elected to convert the asset to an annuity. [The husband] violated the automatic restraining order, which went into effect on February 10, 2017, in accordance with Suppl. Pr. and F. Ct. R. 411(a), by transferring the asset.  Further, on April 1, 2019, [the husband] began to receive monthly benefits under the annuity and failed to inform [the wife] of these payments."

4

Meanwhile, the husband's appeal from the divorce judgment proceeded. In an unpublished memorandum and order, a different panel of this court reversed so much of the divorce judgment that treated the wife's interest in a certain trust as a nonmarital asset and remanded for further proceedings on that one issue. The remainder of the divorce judgment was affirmed. See Savoy v. Savoy, 97 Mass. App. Ct. 1128 (2020). Ultimately, the divorce judge issued the amended divorce judgment on June 16, 2021 (nunc pro tunc to March 19, 2019, the date of the original divorce judgment). Apart from minor adjustments that are not at issue in this appeal, the division of the marital assets did not change. However, because the deadlines for certain transfers of assets had passed, the divorce judge specified new dates for compliance, which ranged from June to September 2021.

After the amended divorce judgment issued, the contempt judge appointed a special master to "effectuate transfers ordered by the [amended divorce judgment]." The special master met with the parties on numerous occasions and filed progress reports on October 5, 2021, December 8, 2021, and April 12, 2022.

In her first report, the special master informed the contempt judge that the parties were in agreement regarding the division of some accounts, and provided recommendations

5

regarding the allocation of the remaining assets.  The special master also specified that one asset, the husband's Bank of America Defined Benefit Plan account, had been converted into an annuity on his seventieth birthday, making its division "more difficult."  In addition, the special master reported that the husband claimed a gold coin collection had been stolen or lost in a move following the divorce, and recommended that the husband be required to pay the wife for her share of the collection's value at the time of the divorce.

In her second report, the special master relayed that after a meeting held on November 30, 2021, the parties had agreed on the allocation of many of their assets and "[a]ll but two issues were resolved."[6]  The two remaining issues concerned the division of the Bank of America Defined Benefit Plan and the gold coin collection.  According to the special master, the parties, having not reached their own resolution, "agreed to submit to and abide by the [s]pecial [m]aster's decision."

The special master's third and final report was preceded by an order dated March 28, 2022, in which the contempt judge stated, "[i]n the event compliance [regarding the two unresolved issues] has not been achieved, the [s]pecial [m]aster shall

_____

[6] However, as the judge subsequently found, the husband did not abide by their agreement and certain assets were neither divided nor transferred within the agreed on timeframe.

6

indicate how the allocation / division / transfer shall be achieved and a proposed timeline for same."  The special master did so, and in her third report, recommended the following allocation with respect to the Bank of America Defined Benefit Plan:

> "Wife should receive the sum of $16,425.90 representing one half of the annuity payments received by Husband of $912.55 per month for 36 months.  Payment to be made by cashier's check on . . . May 6, 2022.
>
> Husband should provide the balance of the Bank of America [account] as of . . . April 29, 2022. . . .  Husband should bring a cashier's check, payable to Wife in an amount equal to one half of the value held in the account along with the proof of value to Wife on . . . May 6, 2022."

Regarding the gold coins, the special master supplemented her earlier recommendation as follows:

> "The Court found at the time of trial the gold coins had a value of $17,000.00 and the price of gold was $1,190.60 per 'unit.'  Dividing the gross value by the price, the multiplier is 14.27.  The value of a unit [] as of noon on April 12, 2022 was $1,978.00 x 14.27 = $14,121.45 to Wife."[7]

The March 28, 2022 order also permitted the parties to file amended pleadings on the pending complaints for contempt.  The wife filed an amended complaint for contempt on April 1, 2022 (amended complaint), which incorporated all the allegations contained in the first and second complaints, and included new allegations that the husband (1) failed to divide an asset

---

[7] The special master also reported on the status of frozen Fidelity accounts, but those assets are not at issue in this appeal.

7

(Prothena stock) acquired after the divorce judgment, which he agreed to transfer to the wife during a meeting with the special master; and (2) failed to divide personal property, including various prints and the gold coin collection. The wife also filed a motion requesting attorney's fees and costs, which the husband opposed. The husband filed an answer to the wife's amended complaint and affirmative defenses on April 7 and October 18, 2022.

Thereafter, the matter proceeded to trial. Over three nonconsecutive days, the contempt judge heard testimony from four witnesses: the wife, the husband, the special master, and the wife's attorney (on the issue of fees). Numerous exhibits, including a joint stipulation on the transfer of assets and dates of compliance, were admitted in evidence. In the contempt judgment dated July 14, 2023, the judge found the husband in contempt with respect to several provisions of the divorce judgment and amended divorce judgment, and ordered the husband to pay the statutory interest in connection with certain provisions, as well as the wife's attorney's fees and the special master's fees.

We summarize the contempt judgment, which consists of eleven numbered paragraphs as follows:[8]

_____

[8] The numbered paragraphs of our summary correspond to the numbered paragraphs set forth in the contempt judgment. The

1. The judge found the husband in contempt for failure to pay the wife $209,000 by July 1, 2019.[9] The husband transferred these funds to the wife on September 24, 2019. As a result of this unexcused delay, the judge ordered the husband to pay (a) interest of six percent applicable to the period between the date of the divorce judgment, and the filing of the wife's first complaint for contempt (postjudgment interest); and (b) interest of twelve percent applicable to the period between the filing of the first complaint for the contempt, and the date of the husband's compliance (contempt interest).

2. The judge found the husband in contempt for failing to remove the wife from the encumbrances on the former marital home by July 1, 2019. The husband did not satisfy this obligation until September 24, 2019.

3. The judge found the husband in contempt for failing to close the joint Capital One account and pay the remaining balance of $6,590 to the wife first by May 1, 2019, and then by July 30, 2021. On April 25, 2019, the husband removed $5,000 from the account, preventing its timely closure. Although the funds were eventually replaced, the account was not closed until

---

contempt judgment only awarded interest as specified in paragraphs 1, 3, and 6.

[9] As noted, this payment represented the wife's share of the equity in the marital home, ownership of which remained with the husband.

9

December 1, 2021.  The judge ordered the husband to pay postjudgment and contempt interest based on this unexcused delay.

4.  The judge found the husband in contempt related to the division of the Arkema, Medtronic, and Regions stock, all of which transfers should have occurred first by July 1, 2019, and then by July 30, 2021.  The husband transferred the Arkema stock on June 27, 2022, the Medtronic stock on January 7, 2022, and the Regions stock on January 20, 2022.

5.  The judge found the husband in contempt for his failure to divide and transfer the Prothena stock, which he agreed to transfer after a meeting between the parties and the special master.  The judge ordered the husband to transfer the stock forthwith based on the parties' agreement.

6.  The husband was found in contempt for failing to divide the Bank of America Defined Benefit Plan equally, first by July 1, 2019, and then by September 1, 2019.  Pursuant to the special master's recommendation, which the husband agreed to follow, the wife should have received (a) $23,270.02, representing her share of annuity payments that the husband had already received, and (b) one-half of the value held in the account as of the close of business on June 30, 2023.  The judge ordered the husband to

comply with that recommendation and awarded postjudgment and contempt interest on the $23,270.02.[10]

7. The husband was found in contempt for failing to divide equally the marital coverture portion of the Ameritrade and Fidelity retirement accounts, which should have been accomplished first by July 1, 2019, and then by September 1, 2021. The husband accomplished the transfers of the wife's share of the Ameritrade accounts on January 25 and 27, 2022, respectively, and the Fidelity accounts on May 5, 2022.

8. The husband was found in contempt related to the division of his investment accounts, which transfers were to occur first by July 1, 2019, and then by July 30, 2021. The parties worked with the special master to reach an agreement regarding the calculations of the stocks within these investment accounts and the allocation of shares. The husband failed to make the transfers that he agreed to in a timely manner and, on January 24, 2022, he transferred some assets but not in the exact amount agreed on between the parties.[11] The judge ordered

---

[10] These interest figures were based on the date of filing the second complaint in February 2020 (rather than the first complaint in July 2019).

[11] The judge specifically found that the husband made the following partial transfers to the wife on January 24, 2022: JP Morgan / Becton Dickson (152 of 181 shares), Abbott (111 of 132 shares), Bank of Hawaii (108 of 129 shares) and CVS (660 of 787 shares).

the husband to transfer the remaining shares in accordance with the special master's report.

9.  The judge ruled that if the parties were unable to agree within twenty-one days as to the amount of interest owed pursuant to the contempt judgment, the issue would be determined by a special master.

10.  The husband was found in contempt for his failure to timely divide personal property, including various prints and the gold coin collection, first by April 18, 2019, and then by July 16, 2021.  The husband delivered the prints to the wife on November 30, 2021, and paid her $11,900 on June 29, 2022, for her share of the value of the coin collection pursuant to the special master's third report.

11.  The judge ordered the husband to pay the wife $178,810 in legal fees and $861.50 in costs for a total payment of $179,671.50.  The judge also made the husband solely responsible for the special master's fees.

Discussion.  The husband first argues that the scope of the trial should have been limited to issues related to the division of the Bank of America Defined Benefit Plan and the gold coin collection.  Second, he contends that the contempt findings should be vacated because the wife did not meet her burden of proving contempt by clear and convincing evidence.  Third, he claims that the contempt judge improperly ordered him to pay

12

postjudgment and contempt interest in connection with the delayed transfer of certain assets. Lastly, he argues that the judge abused her discretion in awarding attorney's fees to the wife and in requiring the husband to pay the entirety of the special master's fees. We address each of these arguments in turn.

1. Scope of trial. The husband argues, for the first time on appeal, that the scope of the trial should have been limited to the two issues that were not resolved by the special master, namely the division of the Bank of America Defined Benefit Plan and the gold coins. Having failed to raise this issue below, the husband has waived it. See Weiler v. PortfolioScope, Inc., 469 Mass. 75, 86 (2014). Consequently, we do not address the argument.

2. Contempt findings. "[A] civil contempt finding [must] be supported by clear and convincing evidence of disobedience of a clear and unequivocal command." Birchall, petitioner, 454 Mass. 837, 853 (2009) (Birchall). "We review the judge's ultimate finding of contempt for abuse of discretion, but we review underlying conclusions of law de novo and underlying findings of fact for clear error." Jones v. Jones, 101 Mass. App. Ct. 673, 688 (2022), quoting Commercial Wharf E. Condominium Ass'n v. Boston Boat Basin, LLC, 93 Mass. App. Ct. 523, 532 (2018).

13

The thrust of the husband's argument is that the wife cannot meet her burden, where, as here, he eventually complied with the orders contained within the original and amended divorce judgments. Specifically, he asserts that even though he failed to comply with all the requirements and obligations of the divorce judgment and amended divorce judgment, as detailed in paragraphs 1, 2, 3, 4, 7, 8, and 10 of the contempt judgment, he purged himself of contempt before the contempt trial started. He is correct, as the wife agrees, with respect to the transfers described in those paragraphs. Although we do not condone the husband's disobedience of court orders, we agree that he could not properly be held in contempt in the instances in which he was in full compliance by the time of the trial.[12] See Cooper v. Cooper, 62 Mass. App. Ct. 130, 143 (2004) ("contempt is precluded by the judge's finding that 'the [h]usband eventually did pay the money, and has purged his contempt prior to the hearing'").[13]

---

[12] Regarding the husband's obligation to transfer investment assets to the wife as outlined in paragraph 8 of the contempt judgment, we conclude, as the wife concedes, that although he did not divide the assets as required, his overall compliance was sufficient to purge him of contempt.

[13] Given our conclusion, we need not address the husband's argument that the new deadlines for compliance contained in the amended divorce judgment replaced those in the original divorce judgment.

That said, the husband was properly adjudicated in contempt for failing to transfer the Prothena stock and for failing to divide the Bank of America Defined Benefit Plan. As noted in paragraph 5 of the contempt judgment, the husband did not transfer the Prothena stock pursuant to his agreement with the special master. Also, in paragraph 6 of the contempt judgment, the judge found that the husband did not follow the special master's recommendations as to the Bank of America Defined Benefit Plan despite agreeing to do so. The husband's argument that these obligations were not subject to enforcement by a contempt action because they were recommended by the special master and were not explicitly ordered by the judge is unavailing.

While it is true that "[c]ivil contempt 'can be used as an enforcement mechanism only if the underlying order is sufficiently clear, so that the party to be bound is provided with adequate notice of the required or prohibited activity'" (citation omitted), Lynch v. Police Comm'r of Boston, 51 Mass. App. Ct. 772, 776 (2001), we discern no significance in the fact that the underlying orders were issued by a special master appointed by a judge as opposed to the judge herself. Even if we were to assume otherwise, it is clear here that the special master was appointed to "effectuate transfers ordered by the [amended divorce judgment]." Furthermore, the record

15

demonstrates that the husband had adequate notice in each instance.

With respect to the transfer of the Prothena stock (paragraph 5), the record establishes that on meeting with the special master, the husband agreed to the transfer. The judge did not err in finding that this agreement was "within the charge of the [s]pecial [m]aster." Further, the husband cannot legitimately claim that he had no notice of his obligation to transfer the stock when he agreed to do so and the transfer was addressed in the special master's first report, raised by the wife in her amended complaint, and explicitly referenced by the judge in a scheduling order. It was within the judge's discretion to conclude that the husband's failure to adhere to the agreement constituted disobedience of a clear and unequivocal command and we discern no abuse of discretion here. See Birchall, 454 Mass. at 853; Jones, 101 Mass. App. Ct. at 688.

For similar reasons, the judge did not abuse her discretion when she adjudicated the husband in contempt for failing to divide his Bank of America Defined Benefit Plan (paragraph 6). As noted, the divorce judgment entitled the wife to fifty percent of the marital coverture portion of the husband's Bank of America Defined Benefit Plan, and, after the postdivorce conversion of that asset into an annuity, the parties agreed to

16

allow the special master to determine the appropriate method for effectuating the division of the converted asset, which she did in her third report. Furthermore, despite the husband's argument that the special master's determination exceeded her authority, we agree with the judge that the recommendation "rest[ed] squarely within the generalized charge the Court entered on July 16, 2021, 'to effectuate the transfers ordered by the [amended divorce judgment].'" The husband had adequate notice of the special master's recommendations with respect to the Bank of America Defined Benefit Plan, and he failed to adhere to those recommendations despite agreeing to do so. We therefore discern no abuse of discretion in the judge's decision to adjudicate the husband in contempt relative to that asset. See Birchall, 454 Mass. at 853; Jones, 101 Mass. App. Ct. at 688.

3. Interest. The husband argues that the judge abused her discretion by requiring him to pay interest in connection with his late payment for the wife's share of equity in the marital home (paragraph 1),[14] his delay in transferring the remaining

---

[14] Regarding the husband's $209,000 payment for the wife's share of equity in the marital home, the judge ordered that he pay interest at the rate of six percent per year between the date of the divorce judgment (March 19, 2019) and the date of the first complaint (July 22, 2019), and twelve percent per year from the date of the first complaint to the date of compliance (September 24, 2019).

17

balance held in the Capital One account (paragraph 3),[15] and his failure to provide the wife with a portion of his Bank of America annuity benefits (paragraph 6).[16]  The husband is incorrect.

On all the aforementioned matters, the judge ordered the husband to pay two types of interest:  postjudgment interest pursuant to G. L. c. 235, § 8, and contempt interest pursuant to G. L. c. 215, § 34A.  Postjudgment interest is currently awarded at the rate of six percent for "[e]very judgment for the payment of money . . . from the day of its entry."  G. L. c. 235, § 8.[17] See G. L. c. 107, § 3; Karellas v. Karellas, 54 Mass. App. Ct. 469, 471-475 (2002).  By contrast, contempt interest is properly awarded on a finding of contempt at the rate of twelve percent

---

[15] The judge awarded statutory interest on the $6,590 value of the Capital One account at the rate of six percent per year between the date of the divorce judgment and the date of the first complaint, and twelve percent per year from the date of the first complaint to the date the account was closed (December 1, 2021).

[16] The husband was ordered to pay interest on the $23,270.02 that the wife should have received in annuity payments at the rate of six percent per year from the date he received annuity payments (April 2019) to the date of the second complaint (February 13, 2020), and twelve percent per year from the date of the second complaint to the date of compliance on the amount owed.

[17] More specifically, the statute provides that "[e]very judgment for the payment of money shall bear interest from the day of its entry at the same rate per annum as provided for prejudgment interest in such award, report, verdict or finding." G. L. c. 235, § 8.

18

from the date of filing the complaint for contempt until the date of compliance. See G. L. c. 215, § 34A; G. L. c. 231, § 6C.[18] See also Karellas, supra at 474 ("interest . . . available upon a finding of contempt . . . is not a substitute for statutory interest upon a money judgment under G. L. c. 235, § 8. The statutes serve different purposes").

We turn first to the interest awarded in connection with the husband's failure to timely pay the wife for her share of the equity in the marital home and the Capital One balance.[19] Contrary to the husband's assertion, postjudgment interest on the matters began to accrue from the date of the original divorce judgment, and not from the date of the amended divorce judgment. As we have previously noted, the amended divorce judgment was issued nunc pro tunc to March 19, 2019, the date of the original judgment, and the husband did not prevail on his motions to stay the divorce judgment pending appeal. Therefore, under the plain language of G. L. c. 235, § 8, the award of postjudgment interest running from the date of the divorce judgment was proper. On the other hand, given our conclusion that the husband should not have been held in contempt on the

_____

[18] "Any monetary contempt judgment shall carry with it interest, from the date of filing the complaint, at the rate determined under the provisions of [G. L. c. 231, § 6C]." G. L. c. 215, § 34A.

[19] See notes 14 and 15, supra.

two matters because he was in compliance before the contempt judgment entered, the award of contempt-related interest must be reversed. Accordingly, the wife is entitled to six percent interest from the date of the original divorce judgment to the date of the husband's compliance on the marital home payment and the Capital One balance.

The judge's award of interest on the Bank of America Defined Benefit Plan presents a more complicated issue. The order in the divorce judgment, which assigned an equal portion of the retirement account assets to the wife, was not one for the payment of money. See Karellas, 54 Mass. App. Ct. at 472. And, although the judge ultimately found that the husband owed the wife $23,270.02, this amount was not included in the divorce judgment and instead represented one-half of the payments the husband received once the account was converted into an annuity. The wife is not entitled to postjudgment interest on this amount. However, "interest under G. L. c. 215, § 34A, is available as a remedy for ongoing failure to comply with an order . . . that may not qualify as a 'judgment for the payment of money' under G. L. c. 235, § 8, and might not thus carry such statutory interest. In this sense G. L. c. 215, § 34A, fills in a gap and provides for interest that would not be otherwise available." Karellas, supra at 474. Based on our conclusion that the husband was properly found in contempt on this matter,

20

the wife is entitled to twelve percent interest on the $23,270.02 from the date she filed the second complaint until the date of the husband's compliance.[20]

4. _Fees_. The husband first argues that the judge abused her discretion by ordering him to pay the wife's attorney's fees. The judge has considerable discretion in determining the necessity and amount of attorney's fees in appropriate circumstances. See _Moriarty_ v. _Stone_, 41 Mass. App. Ct. 151, 159 (1996). It is well established that, under G. L. c. 208, § 38, a judge may award a party counsel fees for obstructionist behavior, even in the absence of a contempt finding. See _Cooper_, 62 Mass. App. Ct. at 143-144 (reversing contempt judgment against husband while affirming fees awarded in connection with action due to his obstructionist conduct); _Hennessey_ v. _Sarkis_, 54 Mass. App. Ct. 152, 156 (2002) (ample basis for attorney's fee award, despite husband's compliance, to "mitigate expenses incurred as a result of the husband's obstructionist conduct"). Here, the judge found that the

---

[20] We acknowledge that it is unclear whether the interest provision set forth in G. L. c. 215, § 34A, was intended to apply to contempt judgments involving nonsupport obligations. While the plain language of the interest provision appears to apply broadly to "[a]ny monetary contempt judgment," G. L. c. 215, § 34A, our cases suggest that it was intended to be limited to support obligations only. See _Poras_ v. _Pauling_, 70 Mass. App. Ct. 535, 546 (2007); _Karellas_, 54 Mass. App. at 474. We do not, however, reach that issue as it has not been raised by either party.

21

husband "significantly delayed his distribution of marital assets [and] unnecessarily prolonged these proceedings . . . [his] behaviors were obstructionist and unnecessarily delayed [the wife] from receiving her share of marital assets."  Given these findings, we discern no abuse of discretion in the judge's decision to award attorney's fees.  In addition, there is no basis to disturb the judge's calculation of the amount of the fees which were adequately supported by counsel's testimony and affidavit.  We note that the judge acknowledged that some legal fees "would have been incurred in the normal course of the division of assets."  However, as the judge further observed, the husband's actions "unnecessarily delayed the transfer of assets even with the assistance of the [c]ourt ordered [s]pecial [m]aster," and therefore, an award of $178,810 in legal fees was justified.[21]

Next, the husband claims that the judge abused her discretion in requiring him to pay the entirety of the special master's fees.  We disagree.  The award is supported by the evidence which demonstrated that the husband's conduct bordered on malfeasance.  Given the circumstances, the judge did not abuse her broad equitable power to fashion appropriate remedies.

---

[21] Given our discussion in note 2, supra, we find the husband's argument on the inconsistency of the legal fees awarded compared to those in the judge's findings to be without merit.

22

See Cabot v. Cabot, 55 Mass. App. Ct. 756, 768 (2002). The special master testified, and the court credited, that while the special master was working with the parties, the husband delayed his compliance without excuse, failed to provide the special master with certain requested documents, and changed his mind with respect to the division of certain assets. The special master went so far as to say that she "had never gone to such lengths to ensure compliance as a master, ever," and suggested in her third report that the husband "compensate [the wife] by paying a penalty in addition to the fees associated with his lack of compliance." Thus, the judge properly held the husband accountable for the consequences of his "intentional and inexcusable" behavior which "clearly caused an increase in legal time and fees for [the wife]."

Conclusion.[22] We reverse so much of the July 14, 2023 contempt judgment as (a) found the husband guilty of contempt in paragraphs 1, 2, 3, 4, 7, 8, and 10; (b) awarded twelve percent interest in paragraphs 1 and 3; and (c) awarded six percent interest in paragraph 6. Paragraph 1 is modified to award six percent interest from March 19, 2019, to September 24, 2019. Paragraph 3 is modified to award six percent interest from March

---

[22] We deny the wife's request for an award of costs and appellate attorney's fees, pursuant to G. L. c. 211A, § 15, and Mass. R. A. P. 25, as appearing in 481 Mass. 1654 (2019).

23

19, 2019, to December 1, 2021.  As so modified, the July 14, 2023 contempt judgment is affirmed.

<u>So ordered</u>.

By the Court (Vuono, Henry & Wood, JJ.[23]),

Clerk

Entered:  September 11, 2025.

---

[23] The panelists are listed in order of seniority.